Filing # 138933150 E-Filed 11/19/2021 06:21:38 PM

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## IN AND FOR LEE COUNTY, FLORIDA

STARR INDEMNITY & LIABILITY
COMPANY, as Subrogee of UYTSAIFLY
800XP, LLC,

      Plaintiff,

                                         **CASE NO:**

v.

STANDARD AERO (SAN ANTONIO), INC.;
STANDARD AERO (ALLIANCE), INC., and
STANDARDAERO BUSINESS AVIATION
SERVICES, LLC

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, STARR INDEMNITY & LIABILITY COMPANY (hereinafter referred to as "Starr"), as Subrogee of UYTSAIFLY 800XP, LLC, sues Defendants, STANDARD AERO (ALLIANCE), INC. (hereinafter referred to as "Standard Aero (Alliance)"); STANDARD AERO (SAN ANTONIO), INC. (hereinafter referred to as "Standard Aero (San Antonio)"); and STANDARDAERO BUSINESS AVIATION SERVICES, LLC (hereinafter referred to as "Standardaero BAS"), (collectively, Standard Aero (Alliance), Standard Aero (San Antonio) and Standardaero BAS are herein collectively referred to as "Defendants" where applicable), and states as follows:

## JURISDICTION

1.     This is an action for damages in excess Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs and Attorneys' fees. This action is, in all respects, within the defined jurisdictional limits of this Honorable Court.

2.      The Defendants are subject to the jurisdiction of the Court pursuant to <u>Fla. Stat.</u> <u>§48.193,</u> as entities that personally or through an agent do certain acts, submit themselves to the jurisdiction of the Courts of Florida for any action arising from the acts alleged herein, including but not limited to: operating, conducting, engaging in, or carrying on a business or business venture in Florida; having an office or agency in Florida; and causing injury to persons or property within the State of Florida arising out of an act or omission by Defendants outside the State of Florida, if, at or about the time of the injury, either: (a) Defendants were engaged in solicitation or service activities within this State; or (b) products, materials, or things processed, serviced, or manufactured by Defendants anywhere were used or consumed within this State in the ordinary course of commerce, trade, or use.

3.      The Defendants have substantial and not isolated activities within Florida, as each entity is a foreign corporation authorized under Florida Statute to do business in Florida, and in fact conducts normal and regular business in Florida, including but not limited to, aircraft service related businesses.

## **GENERAL ALLEGATIONS**

4.      At all times material, Plaintiff, Starr, is a Texas corporation and is authorized as a foreign profit corporation to conduct business in the State of Florida.

5.      At the time of the incident, the Subject Aircraft was owned by UYTSAIFLY 800XP, LLC. The Aircraft was managed and operated by Delta Private Jets, Inc. (hereinafter referred to as "Delta Private Jets"), which was a foreign corporation authorized to conduct business in the State of Florida.

6.      At all times material, Defendant, Standard Aero (San Antonio) was a foreign corporation authorized to conduct business in the State of Florida.

7.    At all times material, Defendant, Standard Aero (Alliance) was a foreign corporation authorized to conduct business in the State of Florida.

8.    At all times material, Defendant, Standardaero BAS (FAA Certified Repair Station; No.: XB1R606K) was a foreign corporation authorized to conduct business in the State of Florida.

**FACTUAL BACKGROUND**

9.    At all times material, Delta Private Jets managed and operated a 1997 Raytheon Hawker 800 XP Jet, bearing U.S. Federal Aviation Administration Registration Number, N86MN and Manufacturer's Serial Number, 258330 (hereafter referred to as the "Subject Aircraft"), which was owned by UYTSAIFLY 800XP, LLC and insured by Starr pursuant to Policy Number 1000223023-04 during the applicable Policy Period of July 15, 2019 to July 15, 2020.

10.    On October 6 or 7, 2019, at the time of the incident, the Subject Aircraft was being operated by Delta Private Jets as a Title 14 Code of Federal Regulations Part 135 on-demand charter flight from Naples Municipal Airport ("APF") and was destined for Kerrville Municipal Airport ("ERV"), Kerrville, Texas. During the initial climb from APF, the flight crew attempted to retract the landing gear. The main landing gear retracted normally, however, the nose gear remained in transit and failed to fully retract. Several attempts by the flight crew to retract and extend the nose landing gear to a locked position were unsuccessful.

11.    Due to the failure of the nose gear to fully retract, the Subject Aircraft was forced to divert to Southwest Florida International Airport ("RSW") in Fort Myers, Florida and execute an emergency landing. During the landing sequence, the nose landing gear failed to extend and the Subject Aircraft was forced to land without the nose landing gear being operational and skidded to a stop on the Runway causing substantial damage to the Subject Aircraft's fuselage and component parts.

12.     Pursuant to its Policy of Insurance, described in Paragraph 9 above, Starr paid its Insured/Aircraft Owner, UYTSAIFLY 800XP, LLC, for the total hull loss in the amount of $1,600,000.00.

13.     As a consequence of its payment to the Insured/Aircraft Owner, UYTSAIFLY 800XP, LLC, Starr is subrogated both by contract and by Florida law to UYTSAIFLY 800XP, LLC's, rights in this action against the Defendants.

14.     Starr made the payment to protect its own interest.

15.     Starr did not act as a volunteer.

16.     Starr was not primarily liable for the debt.

17.     Starr paid off the entire debt owing to UYTSAIFLY 800XP, LLC.

18.     Subrogation will not work any injustice to the rights of a third party.

19.     As a result, Starr stands in the shoes of the entity, UYTSAIFLY 800XP, LLC, whose claims have been discharged and thus succeeds to the right and priorities of UYTSAIFLY 800XP, LLC.

20.     Additionally, The Contract of Insurance conveys to Starr, upon paying the debt of the Defendants to UYTSAIFLY 800XP, LLC, the contractual right to subrogation as provided for in Section 10(f) of the policy of insurance (Pg. 37) **(Exhibit "A")** which states:

> *Company's Rights of Recovery*
>
> *In the event of any payment made under the Policy, the Company will assume all of the insured's rights of recovery against any person or organization. The insured will execute and deliver instruments and papers and do whatever else is necessary to enforce those rights.*

21.     All conditions precedent to bringing this action have occurred, have been waived or have otherwise been fulfilled.

## COUNT I –NEGLIGENCE

22.    Starr realleges and incorporates the allegations contained in Paragraphs 1-21 as if fully set forth herein.

23.    UYTSAIFLY 800XP, LLC, or its Agent, Delta Private Jets, on or about January, 2019 requested Defendants to perform certain maintenance and repairs on the Subject Aircraft and Defendants undertook to perform such services.

24.    At all times material hereto, Defendants owed a duty to UYTSAIFLY 800XP, LLC, to properly inspect, repair, and perform all maintenance in a workmanlike manner while adhering to the Federal Aviation Administration Regulations governing maintenance, and to return the Subject Aircraft into service in an airworthy and safe condition.

25.    Defendants were negligent and breached their respective duties to UYTSAIFLY 800XP, LLC including, but not limited to, the following ways:

  a.   Failure to exercise due and reasonable care during the inspection and maintenance of the Subject Aircraft's nose landing gear which was removed, overhauled and reinstalled by Defendants while the Subject Aircraft was undergoing heavy maintenance by Defendants. The negligent acts of Defendants resulted in the nose gear actuator drag stay missing its nut, washer and/or split pin during reinstallation of the nose landing gear which subsequently led to deformation in the attachment area(s);

  b.   Failure of Defendants' Quality Assurance Inspector to properly inspect the work accomplished by the assigned mechanic(s) during the nose landing gear removal, overhaul and reinstallation resulting in a negligent and incorrect installation and sign-off endorsement stating that the work on the nose landing gear was performed

in accordance with the Subject Aircraft's maintenance manual instructions #32-20-12 and other required manuals and/or instructions;

    c.  Returning the Subject Aircraft to service in an unairworthy condition in violation of the Federal Aviation Administration Regulations;

    d.  Failing to properly maintain and/or repair the Subject Aircraft in a manner that would be safe for its intended use; and

    e.  Other ways as may be discovered.

26.    As a direct and proximate cause of the Defendants' negligence, UYTSAIFLY 800XP, LLC suffered extensive, irreparable damage to the Subject Aircraft.

27.    As a direct and proximate cause of the Defendants' negligence, which caused extensive damage to the Subject Aircraft's nose landing gear, fuselage, other components and parts, the Subject Aircraft was declared a total constructive loss **(Exhibit "B")**.

28.    Starr paid the hull loss to its Insured, UYTSAIFLY 800XP, LLC, pursuant to its Policy of Insurance, in the amount of $1,600,000.00.

29.    Following payment by Starr to UYTSAIFLY 800XP, LLC, Starr was able to sell the Subject Aircraft Hull as salvage, recouping the amount of $440,537.50, therefore, making the Hull net loss $1,159,462.50. In addition, pursuant to the Policy, Starr paid the following sums associated with the subject loss: $47,972.96 for rental aircraft; $297.45 for trip interruption; $51,268.62 for aircraft recovery, storage, preservation and inspections, making the total damages amount sustained by Starr, $1,259,001.53.

30.    As a result, Starr is subrogated to the rights and claims of UYTSAIFLY 800XP, LLC herein.

WHEREFORE, Starr Indemnity & Liability Company, as Subrogee to UYTSAIFLY 800XP, LLC, herein demands judgement against the Defendants in the amount of $1,259,001.53, which represents the net amount paid by Starr to or on behalf of the Insured/Aircraft Owner, UYTSAIFLY 800XP, LLC, in addition to the additional costs as outlined in Paragraph 29 above, interest, costs and Attorney's fees and such other relief as this Honorable Court deems proper.

<u>**COUNT II – BREACH OF CONTRACT**</u>

31.    Starr realleges and incorporates the allegations contained in Paragraphs 1-21 as if fully set forth herein.

32.    UYTSAIFLY 800XP, LLC, or its Agent, Delta Private Jets, on or about January, 2019 requested Defendants to perform certain maintenance and repairs on the Subject Aircraft and Defendants undertook to perform such services, pursuant to a written agreement. (Plaintiff is not in possession of the Agreement and said Agreement may be in the possession of the Defendants.)

33.    Pursuant to the terms of that agreement and the associated express and implied terms of such an agreement for the performance of maintenance and repairs on the FAA certificated Subject Aircraft, Defendants owed a duty to UYTSAIFLY 800XP, LLC, to properly inspect, repair, and perform all maintenance and repairs in a workmanlike manner while adhering to the Federal Aviation Administration Regulations governing maintenance, and to return the Subject Aircraft into service in an airworthy and safe condition.

34.    Defendants breached their responsibilities and duties under the contract to UYTSAIFLY 800XP, LLC, including, but not limited to, the following ways:

      a.    Failure to adhere to acceptable standards of workmanlike performance and the performance requirements as set forth under the Federal Aviation Administration

Regulations and Guidelines and to exercise due and reasonable care during the inspection, maintenance and repairs of the Subject Aircraft's nose landing gear which was removed, overhauled and reinstalled by Defendants while the Subject Aircraft was undergoing heavy maintenance. The acts of the Defendants resulted in the nose gear actuator drag stay missing its nut, washer and/or split pin during reinstallation of the nose landing gear which subsequently led to deformation in the attachment area(s);

b.  Failure of Defendants' Quality Assurance Inspector, pursuant to the workmanlike standards for such performance as provided for or implied in the contract, to properly inspect the work accomplished by the assigned mechanic(s) during the nose landing gear removal, overhaul and reinstallation resulting in a negligent and incorrect installation and sign-off endorsement stating that the work on the nose landing gear was performed in accordance with the Subject Aircraft's maintenance manual instructions #32-20-12 and other required manuals and/or instructions;

c.  Returning the Subject Aircraft to service in an unairworthy condition in violation of the Federal Aviation Administration Regulations and the Contract.

d.  Failing to properly maintain and/or repair the Subject Aircraft in a manner that would be safe for its intended use; and

e.  Other breaches of the agreement by Defendants as may be discovered.

35.     As a direct and proximate cause of the Defendants' breach of the Agreement, UYTSAIFLY 800XP, LLC has been damaged and suffered extensive, irreparable damage to the Subject Aircraft, and as such, the Subject Aircraft was declared a total constructive loss.

36.    Starr paid the hull loss to the Insured/Aircraft Owner, UYTSAIFLY 800XP, LLC, pursuant to its Policy of Insurance, in the amount of $1,600,000.00.

37.    Following payment by Starr to UYTSAIFLY 800XP, LLC, Starr was able to sell the Subject Aircraft Hull as salvage, recouping the amount of $440,537.50, therefore, making the Hull net loss $1,159,462.50. In addition, pursuant to the Policy, Starr paid the following sums associated with the subject loss: $47,972.96 for rental aircraft; $297.45 for trip interruption; $51,268.62 for aircraft recovery, storage, preservation and inspections, making the total damages amount sustained by Starr, $1,259,001.53.

38.    Pursuant to Starr's contract of insurance it is subrogated to the rights and claims of UYTSAIFLY 800XP, LLC herein.

39.    All conditions precedent to the bringing of this action have been performed pursuant to the contract.

WHEREFORE, Starr Indemnity & Liability Company, as Subrogee to UYTSAIFLY 800XP, LLC herein demands judgement against the Defendants in the amount of $1,259,001.53, which represents the net amount paid by Starr to UYTSAIFLY 800XP, LLC in addition to the additional costs as outlined in Paragraph 37 above, interest, costs and Attorney's fees and such other relief as this Honorable Court deems proper.

## JURY DEMAND

Plaintiff, Starr Insurance & Indemnity Corporation, as Subrogee of UYTSAIFLY 800XP, LLC, hereby respectfully requests a Trial by Jury on all matters so triable as of right.

Dated this **19th** day of November, 2021.

<div style="margin-left: 40%;">

SIBONI LAW GROUP

By:    /s/ Michael C. Siboni    
**Michael C. Siboni, Esquire** (Fla Bar No. 316997)
**Stephen G. Murty, Esq.*** (Fla Bar No. 351717)
    (*Of Counsel to Siboni Law Group)
1900 SE 18th Avenue, Suite 200
Ocala, FL  34471
Phone: (352) 629-7441
Emails:
    Michael@SiboniLawGroup.com
    Morgan@SiboniLawGroup.com
    Steve@MurtyLaw.com
*Counsel for Starr Indemnity & Liability Company*
*as Subrogee to UYTSAIFLY 800XP, LLC*

</div>

STARR INDEMNITY & LIABILITY COMPANY
90 PARK AVENUE, 7TH FLOOR
NEW YORK, NY 10016

# STARR ELITE COMPREHENSIVE
# CORPORATE AIRCRAFT POLICY

ISSUED TO

**DELTA PRIVATE JETS, INC.**

POLICY NUMBER

1000223023-02

UNDERWRITTEN BY

STARR AVIATION AGENCY, INC.
3353 PEACHTREE ROAD, NE
SUITE 1000
ATLANTA, GA 30326

ARRANGED BY

MARSH USA, INC.
3560 LENOX ROAD, SUITE 2400
ATLANTA, GA 30326

# Insuring Your Aviation Risk



Count on a Starr Solution.

STARR
COMPANIES
GLOBAL INSURANCE & INVESTMENTS

Exhibit A

# CONTENTS

DECLARATIONS    4

    Limits of the Company's Liability:    5

    Section One - Liability Coverages    5

        Coverage 1 - Liability for **Scheduled Aircraft**    5
        Coverage 2 - Liability for the Use of **Non-Owned Aircraft**    5
        Coverage 3 - Liability for **Property Damage** to **Non-Owned Aircraft**, and **Temporary Substitute Aircraft**    5
        Coverage 4 - Liability for Charter Referral    5
        Coverage 5 - **Passenger** Voluntary Settlements for **Scheduled Aircraft** and **Non-Owned Aircraft**    6
        Coverage 6 - Liability for **Property Damage** to Hangars and Their Contents    6
        Coverage 7 - Liability for Fire Damage to Real Property    6
        Coverage 8 - Liability for Cargo    6
        Coverage 9 - Liability Under Contractual Agreements    7
        Coverage 10 - Liability for **Personal Injury** and in/excluding **Advertising Injury**    7
        Coverage 11 - Liability for Alcohol Beverage Service    7
        Coverage 12 - Liability for Incidental Medical Malpractice    7
        Coverage 13 - Liability for the Use of **Premises**    7
        Coverage 14 - Liability for the Operation of **Mobile Equipment**    7
        Coverage 15 - Liability for the Operation of an **Auto** while on Airport **Premises**    7
        Coverage 16 - Liability for the Sale of **Aircraft** and Aircraft Products and Services    7
        Coverage 17 - Liability for Hangarkeeper Operations    8
        Coverage 18 - Liability for Garagekeeper Operations    8

    Section Two - Defense, Settlement and Supplementary Payments    8

    Section Three - **Physical Damage** Coverages    8

        Coverage 19 - **Physical Damage** Coverage for **Scheduled Aircraft** (including **Ingestion** and Emergency Landing)    8
        Coverage 20 - **Physical Damage** Coverage for **Spare Engines** and **Spare Parts** including Transit    8
        Coverage 21 - Automatic Insurance for Increased Value of **Scheduled Aircraft** or **Spare Engines** and **Spare Parts**    9
        Coverage 22 - **Physical Damage** Coverage for Mechanics Tools    9

    Section Four - Additional Coverages    9

        Coverage 23 - Temporary Replacement Parts Rental Expense    9
        Coverage 24 - Replacement **Aircraft** Rental Expense    9
        Coverage 25 - Search and Rescue Expenses    9
        Coverage 26 - Runway Foaming and Crash Control Expenses    9
        Coverage 27 - Trip Interruption Expense Coverage    9
        Coverage 28 - Automatic Insurance for Newly Acquired **Aircraft**    10
        Coverage 29 - Lay-Up Credit for **Scheduled Aircraft**    10
        Coverage 30 - Personal Effects and Baggage Expense    10

    Section Five - **Medical Expenses**    10

        Coverage 31 - Medical Payments for **Scheduled Aircraft** and **Non-Owned Aircraft**    10
        Coverage 32 - **Premises** Medical Payments    10

# INSURING AGREEMENTS 11

## Section One - Liability Coverages 11

Coverage 1 - Liability for **Scheduled Aircraft** 11
Coverage 2 - Liability for the Use of **Non-Owned Aircraft** 11
Coverage 3 - Liability for **Property Damage** to **Non-Owned Aircraft**, and **Temporary Substitute Aircraft** 12
Coverage 4 - Liability for Charter Referral 12
Coverage 5 - **Passenger** Voluntary Settlements for **Scheduled Aircraft** and **Non-Owned Aircraft** 13
Coverage 6 - Liability for **Property Damage** to Hangars and Their Contents 14
Coverage 7 - Liability for Fire Damage to Real Property 14
Coverage 8 - Liability for Cargo 15
Coverage 9 - Liability Under Contractual Agreements 15
Coverage 10 - Liability for **Personal Injury** and in/excluding **Advertising Injury** 16
Coverage 11 - Liability for Alcohol Beverage Service 19
Coverage 12 - Liability for Incidental Medical Malpractice 19
Coverage 13 - Liability for the Use of **Premises** 20
Coverage 14 - Liability for the Operation of **Mobile Equipment** 20
Coverage 15 - Liability for the Operation of an **Auto** while on Airport **Premises** 20
Coverage 16 - Liability for the Sale of **Aircraft** and Aircraft Products and Services 21
Coverage 17 - Liability for Hangarkeeper Operations 21
Coverage 18 - Liability for Garagekeeper Operations 22

## Section Two - Defense, Settlement and Supplementary Payments 22

## Section Three - **Physical Damage** Coverages 23

Coverage 19 - **Physical Damage** Coverage for **Scheduled Aircraft** (including **Ingestion** and Emergency Landing) 23
Coverage 20 - **Physical Damage** Coverage for **Spare Engines** and **Spare Parts** including Transit 23
Coverage 21 - Automatic Insurance for Increased Value of **Scheduled Aircraft** or **Spare Engines** and **Spare Parts** 24
Coverage 22 - **Physical Damage** Coverage for Mechanics Tools 24

## Section Four - Additional Coverages 25

Coverage 23 - Temporary Replacement Parts Rental Expense 25
Coverage 24 - Replacement **Aircraft** Rental Expense 25
Coverage 25 - Search and Rescue Expenses 25
Coverage 26 - Runway Foaming and Crash Control Expenses 26
Coverage 27 - Trip Interruption Expense Coverage 26
Coverage 28 - Automatic Insurance for Newly Acquired **Aircraft** 26
Coverage 29 - Lay-Up Credit for **Scheduled Aircraft** 26
Coverage 30 - Personal Effects and Baggage Expense 26

## Section Five - **Medical Expenses** 27

Coverage 31 - Medical Payments for **Scheduled Aircraft** and **Non-Owned Aircraft** 27
Coverage 32 - **Premises** Medical Payments 27

## Section Six - Policy Definitions 27
## Section Seven - Exclusions 31
## Section Eight - Limit of the Company's Liability 33
## Section Nine - Notice of Claims and Other Duties of an **Insured** 35
## Section Ten - Other Conditions of Insurance 36



Underwritten by:



# STARR ELITE COMPREHENSIVE CORPORATE AIRCRAFT POLICY

## DECLARATIONS

Policy Number ____**1000223023-02**____     Previous Policy Number ____1000223023-01____

This section along with the policy provisions and any endorsements attached hereto completes this Starr Elite Comprehensive Corporate Aircraft Policy (Policy), issued by the Company as indicated above (hereinafter called The Company) and produced by Starr Aviation Agency, Inc., Starr Underwriting Agents Limited and Starr Adjustment Services, Inc. (**Aviation Managers**) as the authorized representative of the Company.

**Item 1.  Named Insured:**  DELTA PRIVATE JETS, INC.

Item 2.  Address:        82 COMAIR BOULEVARD
                         ERLANGER, KY  41018

Item 3.  Policy Period:    From:  JULY 15, 2017
                          Until:  JULY 15, 2018

        both at 12:01 AM standard time at the first address shown in Item 2. above.

Item 4.  Pilots:          AS ENDORSED

        The pilot warranty in Item 4, if any, shall not apply to Liability Coverage for **Non-Owned Aircraft**, **Temporary Substitute Aircraft** and Charter Referral. Additionally, the pilot warranty in Item 4, if any, shall not apply while the insured **aircraft** is under the care, custody or control of a repair station for the purpose of maintenance, repair or test flights.

Item 5. Limits of the Company's Liability:

The limit of the Company's liability provided by each Coverage will not exceed:

Section One - Liability Coverages

    Coverage 1 - Liability for **Scheduled Aircraft**

| FAA Cert. Number | Make & Model | Year Built | Seats Crew / Pass | Aircraft Liability Limit |
|---|---|---|---|---|
| ------ | AS ENDORSED ----------------- | ---- | --    -- | $    ----------- |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

    Coverage 2 - Liability for the Use of **Non-Owned Aircraft**

        $_____300,000,000._ Each **Occurrence**

        Maximum Number of Seats: __60__

        Reporting Grace Period: __30__ consecutive days

        This limit is part of, and not in addition to, the limit provided for Coverage 1.

    Coverage 3 - Liability for **Property Damage** to **Non-Owned Aircraft** and **Temporary Substitute Aircraft**

        $_____150,000,000._ Each **Occurrence**

        This limit is part of, and not in addition to, the limit provided for Coverage 2.

    Coverage 4 - Liability for Charter Referral

        $_____300,000,000._ Each **Occurrence**

        This limit is part of, and not in addition to, the limit provided for Coverage 1.

Coverage 5 - **Passenger** Voluntary Settlements for **Scheduled Aircraft** and **Non-Owned Aircraft**

A.  Settlement Limits:

    1.  With respect to any **Scheduled Aircraft** or **Temporary Substitute Aircraft**:

        Each Non-**Crew Member Passenger**:  $_____1,000,000._ Each **Occurrence**

        Each **Crew Member**:  $_____1,000,000._ Each **Occurrence**

    2.  With respect to any **Non-Owned Aircraft** except a **Temporary Substitute Aircraft**:

        Each Non-**Crew Member Passenger**:  $_____1,000,000._ Each **Occurrence**

        Each **Crew Member**:  $_____1,000,000._ Each **Occurrence**

        Total All **Non-Owned Aircraft Crew Members** and Non-**Crew Member Passengers** Combined:  $_____20,000,000._ Each **Occurrence**

B.  Maximum Weekly Indemnity Limit:  $_____5,000._ Each **Passenger**

C.  Maximum Indemnity Period:  __52__ consecutive weeks

These limits are part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 6 - Liability for **Property Damage** to Hangars and Their Contents

$_____100,000,000._ Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 7 - Liability for Fire Damage to Real Property

$_____5,000,000._ Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 8 - Liability for Cargo

$_____5,000,000._ Each **Occurrence**

Deductible: $_____NIL Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 9 - Liability Under Contractual Agreements

$      300,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 10 - Liability for **Personal Injury** and IN cluding **Advertising Injury**

$      25,000,000.  Each Offense and in the Annual Aggregate

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 11 - Liability For Alcohol Beverage Service

$      300,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 12 - Liability for Incidental Medical Malpractice

$      300,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 13 - Liability for the Use of **Premises**

$      300,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 14 - Liability for the Operation of **Mobile Equipment**

$      300,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Coverage 15 - Liability for the Operation of an **Auto** while on Airport **Premises**

$      300,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Coverage 16 - Liability for the Sale of **Aircraft** and Aircraft Products and Services

$      300,000,000.  Each **Occurrence** and in the Annual Aggregate

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Coverage 17 - Liability for Hangarkeeper Operations

$_____150,000,000.\_$ Each **Aircraft**          $_____150,000,000.\_$ Each **Occurrence**

Deductible: $_____$NIL$\_$ Each **Aircraft**          $_____$NIL$\_$ Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Coverage 18 - Liability for Garagekeepers

$_____500,000.\_$ Any One **Auto**          $_____1,500,000.\_$ Any One Loss

Deductible: $_____$NIL$\_$ Each **Auto**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

## Section Two - Defense, Settlement and Supplementary Payments

## Section Three - **Physical Damage** Coverages

Coverage 19 - **Physical Damage** Coverage for **Scheduled Aircraft** (including **Ingestion** and Emergency Landing)

| FAA Cert. Number | Make & Model | Insured Value | Deductible Not **In Motion** | Deductible In Motion/ Ingestion |
|---|---|---|---|---|
| ------ | AS ENDORSED ---------------- | $ ------------ | $ ------- | $ ------ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |

Coverage 20 - **Physical Damage** Coverage for **Spare Engines** and **Spare Parts** Including Transit

$_____15,000,000.\_$ Each **Occurrence**

Deductible:

Not  **In**  **Motion**$_____$NIL$\_$ Each **Occurrence**
$

**In Motion**      $_____$NIL$\_$ Each **Occurrence**

Coverage 21 - Automatic Insurance for Increased Value of **Scheduled Aircraft** or **Spare Engines** and **Spare Parts**

Maximum Automatic **Physical Damage** Limit for **Scheduled Aircraft**:

$_____65,000,000.__ any one **aircraft** without prior approval

Maximum Automatic **Physical Damage** Limit for **Spare Engines** and **Spare Parts**:

$_____15,000,000.__ without prior approval of the **Aviation Managers**

Coverage 22 - **Physical Damage** Coverage for Mechanics Tools

$_____250,000.__ Each Employee     $_____N/A__ Each **Occurrence**

Deductible: $_____NIL__ Each Employee/Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

## Section Four - Additional Coverages

Coverage 23 - Temporary Replacement Parts Rental Expense

$_____5,000,000.__ Each Loss

Minimum Repair Period:          __NIL__   days

Maximum coverage period:        __180__   consecutive days

Coverage 24 - Replacement **Aircraft** Rental Expense

$_____5,000,000.__ Each Loss

Minimum Repair Period:          __NIL__   days

Maximum coverage period:        __180.__  consecutive days

Coverage 25 - Search and Rescue Expenses

$_____5,000,000.__ Each Loss

Coverage 26 - Runway Foaming and Crash Control Expenses

$_____5,000,000.__ Each Loss

Coverage 27 - Trip Interruption Expense Coverage

$_____150,000.__ Each **Passenger**/Each Loss

Coverage 28 - Automatic Insurance for Newly Acquired **Aircraft**

Maximum **Physical Damage** Limit $_____65,000,000._ any one **aircraft** without prior approval of the **Aviation Managers**.

Coverage 29 - Lay-Up Credit for **Scheduled Aircraft**

A pro-rated return of 75____% of the applicable premium at policy expiration if the **scheduled aircraft** is laid up for 30_____ or more consecutive days.

Coverage 30 - Personal Effects and Baggage Expense

$_____500,000._ Each **Passenger**

## Section Five - **Medical Expenses**

Coverage 31 - Medical Payments for **Scheduled Aircraft** and **Non-Owned Aircraft**

A.  With respect to any **Scheduled Aircraft** or **Temporary Substitute Aircraft**:

Each Non-**Crew Member Passenger**; $_____250,000._ Each **Occurrence**

Each **Crew Member**: $_____250,000._ Each **Occurrence**

B.  With respect to any **Non-Owned Aircraft** except a **Temporary Substitute Aircraft**:

Each Non-**Crew Member Passenger**: $_____250,000._ Each **Occurrence**

Each **Crew Member**: $_____250,000._ Each **Occurrence**

Coverage 32 - **Premises** Medical Payments

$_____250,000._ Each **Person**    $_____N/A_ Each **Occurrence**

Item 6.    Policy Premium:    $ .

Item 7.    Endorsements Attached as of Inception:    STARR ELITE PROVISIONS (5/09)
STARR FORMS 10284, 10686, 10687, 10664, 10008, 10340, 10015, 10344, 10323, 10350, 10351, 10480, 10376, 10234, 10356, 10031, 10327, 10328, 10317, 10466, 10189, 10457, 10332, AVN48B, AVN52E, 10318, AVN46B, AVN38B, 10055, 10138, 10007, 20023, AVN2000A,

Producer    MARSH USA, INC.
3560 LENOX ROAD, SUITE 2400
ATLANTA, GA 30326

Countersigned _____
(if required)

At _____

By _____
(Authorized Representative)

Approved By _____
(Authorized Representative)

Date of Issue    JULY 28, 2017  (WH)

Starr Elite Declarations (5/09)    –10–

In consideration of the payment of the premium and in reliance upon the truth of the statements, representations and the declarations made by the **Named Insured** and subject to all of the terms of the Policy including the applicable Limits of the Company's Liability under Item 5, the Company agrees with the **Named Insured** with respect to the coverages stated in the Declarations as follows:

# INSURING AGREEMENTS

## Section One - Liability Coverages

### Coverage 1 - Liability for **Scheduled Aircraft**

The Company will promptly pay on behalf of the **insured** all sums which the **insured** shall be legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** during the policy period arising out of the ownership, maintenance or use of a **scheduled aircraft**.

### Coverage 2 - Liability for the Use of **Non-Owned Aircraft**

The Company will promptly pay on behalf of the "insured", as defined below, all sums which the "insured" becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** during the policy period arising out of the use of **non-owned aircraft** by or on behalf of the "insured".

A. For Coverage 2, the definition of "insured":

    1. with respect to any **temporary substitute aircraft**, means the same as **insured**;

    2. with respect to all other **non-owned aircraft**, means:

        a. the **Named Insured** and,

        b. any officer, director, stockholder, employee, partner, or agent of the **Named Insured** while that person is acting in their capacity as such.

    Regardless of Paragraphs 1. and 2. above, no person or organization will be an **insured** while using any **aircraft** that is owned in whole or in part by; or that is under any lease purchase option agreement by; or that is registered to that organization, person or. any household member of that person.

B. The insurance provided by Coverage 2 shall not apply to any claim or loss arising out of an **insured's** product liability hazard including any products designed, manufactured, sold, distributed, serviced or handled by or on behalf of an **insured**.

C. The **Named Insured** shall promptly advise the **Aviation Managers** of an exclusive lease of, or the use of, any **non-owned aircraft** that exceeds the reporting grace period shown in the Declarations. The **Aviation Managers** may request additional information and charge an additional premium for this use. Inadvertent failure to report this use will not void this coverage provided that the **Named Insured** advises the **Aviation Managers** as soon as possible after the omission is discovered.

D. The insurance provided by Coverage 2 is **excess insurance**.

Coverage 3 - Liability for **Property Damage** to **Non-Owned Aircraft** and **Temporary Substitute Aircraft**

The Company will promptly pay on behalf of the **insured** all sums which the "insured", as defined below, becomes legally obligated to pay as damages arising out of **property damage** caused by an **occurrence** during the policy period to **non-owned aircraft** or **temporary substitute aircraft**. This coverage section shall not apply while the **aircraft** is **in-flight** unless the **aircraft** is operated by a person employed as a professional pilot acting in the capacity as such.

    A.  For Coverage 3, the definition of "insured":

        1.  with respect to any **temporary substitute aircraft**, means the same as **insured**;

        2.  with respect to all other **non-owned aircraft**, means:

            a.  the **Named Insured** and,

            b.  any officer, director, stockholder, employee, partner, or agent of the **Named Insured** while that person is acting in their capacity as such.

        Regardless of Paragraphs 1. and 2. above, no person or organization will be an **insured** while using any **aircraft** that is:

            i.  owned in whole or in part by;

            ii.  that is under any lease purchase option agreement by;

            iii.  that is registered to

        that organization, person or, any household member of that person.

    B.  The insurance provided by Coverage 3 shall not apply to any claim or loss arising out of an **insured**'s product liability hazard including any products designed, manufactured, sold, distributed, serviced or handled by or on behalf of an **insured**. This includes Liability for Hangarkeeper Operation provided under Coverage 17.

    C.  The **Named Insured** shall promptly advise the **Aviation Managers** of an exclusive lease of, or the use of, any **non-owned aircraft** that exceeds the reporting grace period shown in the Declarations. The **Aviation Managers** may request additional information and charge an additional premium for this use. Inadvertent failure to report this use will not void this coverage provided that the **Named Insured** advises the **Aviation Managers** as soon as possible after the omission is discovered.

    D.  The insurance provided by Coverage 3 is **excess insurance**.


Coverage 4 - Liability Coverage for Charter Referral

The Company will promptly pay on behalf of the **Named Insured** all sums the **Named Insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** and arising out of the **Named Insured's** arrangement for use of a **non-owned aircraft** by and on behalf of another person or organization.

Coverage 5 - **Passenger** Voluntary Settlements for **Scheduled Aircraft** and **Non-Owned Aircraft**

Regardless of legal liability and without admitting to the liability of any party, the Company will offer to pay on behalf of the **insured** the sum requested by the **Named Insured** to, or for, the benefit of each covered **passenger** who sustains **bodily injury** caused by an **occurrence** during the policy period arising out of the ownership, maintenance or use of a **scheduled aircraft** or the use of **non-owned aircraft** by, or on behalf of, the **insured**.

If the **bodily injury**, directly and independently of all other causes, results in the:

A.  death or "permanent total disability" of the **passenger**, the Company will offer to pay up to the "settlement limit" as stated in the Declarations under Coverage 5.A.;

B.  "loss" of two or more "body parts", the Company will offer to pay up to the "settlement limit" as stated in the Declarations under Coverage 5.A.;

C.  "loss" of one "body part", the Company will offer to pay up to one-half of the "settlement limit" as stated in the Declarations under Coverage 5.A.;

D.  Expense Reimbursement for Weekly Indemnity Payments:

If a specified "settlement limit" is shown for a **passenger** and if **bodily injury** directly causes that injured **passenger** to become "totally disabled", the Company will reimburse the **Named Insured** for payments they choose to make to the injured **passenger** for the loss of earnings as a result of the disability. However, the Company will only be liable for up to eighty percent (80%) of the average weekly wage of that **passenger** but not exceeding the maximum weekly indemnity limit as stated in the Declarations, under Coverage 5.B.  Payments will be made for the period of continuous total disability for up to the maximum indemnity period shown in the Declarations under Coverage 5. C. If the injured **passenger** is an employee of the **Named Insured** and is injured in the course and scope of that employment, or is a **crew member**, at the time of the **occurrence**, the "settlement limit" will be reduced by the amount of any payments that are made under this paragraph.

E.  It is a condition of payment to or on behalf of any individual(s) that the individual(s) or the individual(s) legal representative will:

1.  if requested, authorize the Company to obtain medical reports and copies of records.  The injured person will submit to examination by the physicians selected by the Company when the Company may reasonably require;

2.  if payment is to be made under paragraphs A, B, or C above, be required to execute a full release, approved by the Company, for all **bodily injury** claims by or on their behalf against any **insured** and the Company for which there is insurance under the Policy.

F.  If within 120 days the payment offer is not accepted or is rejected or if at any time a claim is made or civil action is filed by or on behalf of a **passenger** to whom  this coverage applies for **bodily injury** against any **insured**, Coverage 5 will not apply to or for the benefit of that **passenger**.

G. Coverage 5 will not apply to or for the benefit of any **crew member** on any **non-owned aircraft** unless the Declarations indicates a specified **non-owned aircraft** "settlement limit" for **crew member** and:

1. the **crew member** is a professional pilot who is regularly employed by the **insured** and acting in the capacity as such, or

2. the **crew member** would normally be operating a **scheduled aircraft**, but is operating a **non-owned aircraft** on behalf of the **insured.**

Definitions applicable to Coverage 5:

"Settlement Limit" means the maximum applicable limit the Company will pay to or for each **passenger** as shown in the Declarations under Coverage 5.A.;

"Totally Disabled" means the complete inability to perform any duty pertaining to one's occupation;

"Loss" means, with respect to a hand or foot, severance at or above the wrist or ankle, with respect to an eye, the entire and irrecoverable loss of sight;

"Body Part" means a hand, foot or eye;

"Permanent Total Disability" means the inability of the injured **passenger** after twelve months of being continuously "totally disabled", to perform every duty pertaining to the occupation the person was hired to perform for the rest of that person's life.

## Coverage 6 - Liability for **Property Damage** to Hangars and Their Contents

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay for **property damage** to hangars and their contents not owned by an **insured** caused by an **occurrence** resulting from the **insured's aviation operations** during the policy period.

The insurance provided by Coverage 6 is **excess insurance** and will not apply to any loss or damage to property covered elsewhere in the Policy.

## Coverage 7 - Liability for Fire Damage to Property

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **property damage** caused by an **occurrence** resulting from the **insured's aviation operations** during the policy period arising out of **property damage** to structures or portions thereof rented to or leased to the **Named Insured**, including fixtures permanently attached thereto, if such **property damage** arises out of fire. Coverage 7 shall not apply to liability assumed by the **insured** under any contract or agreement.

The insurance provided by Coverage 7 shall be **excess insurance** over any valid and collectible property insurance (including any deductible portion thereof), available to the **insured**, such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage.

Coverage 8 - Liability for Cargo

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay (less any applicable deductible) for the loss of, or **physical damage** to, the property of others caused by an **occurrence** during the policy period while the property is in the **insured's** care, custody or control and it is on a covered **aircraft** or while it is in the custody of the **insured** on their **premises** prior to loading on or, after unloading from, a covered **aircraft**.

The insurance provided by Coverage 8 is **excess insurance**.

Coverage 8 will not apply to any loss, damage or claim caused by:

   A.   any loss of market or any loss arising from delay whether or not the delay is caused by an **occurrence** covered by the Policy;

   B.   any type of consequential loss;

   C.   infidelity of the **insured**, its employees or agents;

   D.   and confined to wear, tear, deterioration, extremes of temperature or pressure or due to the perishable or hazardous nature of the property;

   E.   any loss in excess of the actual cost of reproducing or replacing destroyed or damaged manuscripts, notes, checks, securities, accounts, bills, deeds, or any other valuable papers; or

   F.   the loss of or damage to the personal effects or baggage of any **passenger**.

Coverage 9 - Liability for Contractual Agreements

   A.   The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** during the policy period arising out of liability assumed by the **Named Insured** or their legal representative in a contract or agreement relating to the ownership, maintenance or use of **scheduled aircraft** or the use of **non-owned aircraft** by the **insured**.

   B.   The Company's Rights of Recovery section shown in Section Ten - Other Conditions of Insurance, Paragraph F., of the Policy will not apply to the extent that it is addressed in any contract or agreement that the **Named Insured** or its legal representative has entered into relating to **physical damage** of property insured by the Policy.

   C.   The **Named Insured** agrees to submit a copy of all such contracts or agreements to the **Aviation Managers** as soon as possible. Inadvertent failure to do so will not void the insurance provided by Coverage 9 as long as the contract or agreement is submitted as soon as possible once the omission is discovered.

   D.   The Company reserves the right to charge an additional premium for any such contract or agreement.

   E.
        The **Aviation Managers** shall not require copies of temporary **aircraft** storage or minor servicing agreements, military or governmental agreements for the use of an airport, lease of premises agreements or agreements approved by the **Aviation Managers** prior to the effective date of the Policy.

F.  The Insurance provided by Coverage 9 shall not apply to any liability assumed:

1.  under any oral contract or agreement, unless the agreement is a contract which is required by a military or governmental body for the **insured**'s use of an airport or an agreement with another party relating to the temporary storage or minor servicing of a **scheduled aircraft** while it is away from its home base;

2.  under any written contract or agreement:

    a.  that is with or for the benefit of any **passenger, crew member** or their heirs. However, subparagraph F. 1. above shall not apply:

        i.   if the contract or agreement is required by a military or governmental body for the **insured**'s use of an airport; or

        ii.  for the Company's right of recovery as stated under Coverage 9, paragraph B;

    b.  to the extent that it applies to major alterations or major repairs as defined in the Federal Aviation Regulations;

    c.  that is with or for the benefit of any manufacturer of an **aircraft** or any **aircraft** parts or equipment, or their employees or agents, to the extent that it relates to their products liability hazard;

    d.  that relates to the sale of an **aircraft**;

    e.  that is entered into after a loss to the extent that it relates to that loss.

## Coverage 10 – Liability for **Personal Injury** or **Advertising Injury**, if included, on the Declarations page

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **personal injury** or **advertising injury**, if included, to which this Insurance applies resulting from the **insured**'s **aviation operations**. The Company will have the right and duty to defend any suit seeking those damages. The Company may at its discretion investigate any offense and settle any claim or suit that may result. However:

A.  The amount the Company will pay for damages is limited as described in Section One – Coverage 10; and

B.  The Company's right and duty to defend end when it has exhausted the applicable limit of insurance in the payment of judgment(s) or settlement(s) under Coverage 10.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section Two – Defense, Settlement and Supplementary Payments.

The insurance provided by Coverage 10 applies to:

A.  **Personal injury** caused by an offense arising out of the **insured**'s **aviation operations**, excluding advertising, publishing, broadcasting or telecasting done by or for the **insured**;

B.  **Advertising injury**, if included, caused by an offense committed in the course of advertising the **insured**'s **aviation operations**, aviation goods, aviation products or aviation services, but only if the offense was committed in the coverage territory during the policy period.

The insurance provided by Coverage 10 shall not apply to:

A. Breach Of Contract

**Advertising injury** or **personal injury** arising out of breach of contract.

B. Continuing Offenses

**Advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

1. this insurance; or,

2. a subsequent, continuous renewal or replacement of this insurance, that:

    a. is issued by the **insured**;

    b. remains in force while the offense continues; and

would otherwise apply to **advertising injury** and **personal injury**.

C. Contracts

**Advertising injury** or **personal injury** for which the **insured** is obligated to pay damages by reason of assumption of liability in contract or agreement.

This exclusion does not apply to the liability for damages that such **insured** would have in the absence of such contract or agreement.

D. Crime Or Fraud

**Advertising injury** or **personal injury** arising out of any criminal or fraudulent conduct committed by or with the consent or knowledge of the **insured**.

E. Expected Or Intended Injury

**Advertising injury** or **personal injury** arising out of an offense, committed by or on behalf of the **insured**, that:

1. is intended by such **insured**; or

2. would be expected from the standpoint of a reasonable person in the circumstances of such **insured**;

to cause injury.

F. Failure To Conform To Representations Or Warranties

**Advertising injury** or **personal injury** arising out of the failure of goods, products or services to conform with any electronic, oral, written or other representation or warranty of durability, fitness, performance, quality or use.

G. Internet Activities

**Advertising injury** or **personal injury** arising out of:

1. controlling, creating, designing or developing of another's Internet site;

2. controlling, creating, designing, developing, determining or providing the content or material of another's Internet site;

3. controlling, facilitating or providing, or failing to control, facilitate or provide, access to the Internet or another's Internet site; or

4. publication of content or material on or from the Internet, other than material developed by the **insured** or at the direction of the **insured**.

H. Media Type Business

**Advertising injury** or **personal injury** arising out of an offense committed by or on behalf of an **insured** whose business is advertising, broadcasting, cablecasting, publishing, telecasting or telemarketing.

This exclusion does not apply to **personal injury** caused by an offense described in subparagraphs A., B. or C. of the definition of **personal injury**.

I. Prior Offenses

**Advertising injury** or **personal injury** arising out of any offense first committed before the beginning of the policy period.

J. Publications With Knowledge Of Falsity

**Advertising injury** or **personal injury** arising out of any electronic, oral, written or other publication of content or material by or with the consent of the **insured**:

1. with knowledge of its falsity; or

2. if a reasonable person in the circumstances of such **insured** would have known such content or material to be false.

K. Employment-Related Practices

1. any damages sustained at any time by any person, whether or not sustained in the course of employment by any **insured**, arising out of any employment-related act, omission, policy, practice or representation directed at such person, occurring in whole or in part at any time by,

   a. arrest, detention or imprisonment;

   b. breach of any express or implied covenant;

   c. coercion, criticism, humiliation, prosecution or retaliation;

   d. defamation or disparagement;

   e. demotion, discipline, evaluation or reassignment;

   f. discrimination, harassment or segregation;

   g. i. eviction; or

      ii. invasion or other violation of any right of occupancy;

   h. failure or refusal to advance, compensate, employ or promote;

   i. invasion or other violation of any right of privacy or publicity;

   j. termination of employment; or

   k. other employment-related act, omission, policy, practice, representation or relationship in connection with any insured at any time.

This exclusion applies:

1. whether the **insured** may be liable as an employer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

L. Wrong Description Of Prices

**Advertising injury** or **personal injury** arising out of the wrong description of the price of goods, products or services.

M. Intellectual Property Laws And Rights

Any actual or alleged **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual or alleged:

1. assertion; or

2. infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or

This exclusion applies, unless such injury:

1. is caused by an offense described in the definition of **advertising injury**; and

2. does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury**.

## Coverage 11 - Liability for Alcohol Beverage Service

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** resulting from the **insured's aviation operations** during the policy period arising out of the serving or giving of any alcoholic beverage at or from the **insured**'s **premises** or any **aircraft** covered by the Policy.

The insurance provided by Coverage 11 is **excess insurance**.

## Coverage 12 - Liability for Incidental Medical Malpractice

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **bodily injury** caused by an **occurrence** resulting from the **insured's aviation operations** during the policy period arising out of "Incidental Medical Malpractice".

"Incidental Medical Malpractice" means injury arising out of the rendering of or failure to render, during the policy period, the following services:

A. medical, automatic external defibrillator, surgical, dental, x-ray, or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

B. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

C. The insurance provided by Coverage 12 shall not apply to:

1. expenses incurred by the **insured** for first-aid to others at the time of an accident;

2. any **insured** engaged in the business or occupation of providing any of the services described under "Incidental Medical Malpractice" above;

3. injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described under "Incidental Medical Malpractice" above; or

4. the failure to render automatic external defibrillator treatment, if the **aircraft** or **premises** are not equipped with automatic external defibrillator units.

Coverage 13 - Liability for Use of **Premises**

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** resulting from the **insured's aviation operations** during the policy period arising out of the ownership, maintenance or use of **premises**.

The insurance provided by Coverage 13 is **excess insurance.**

Coverage 14 - Liability for the Operation of **Mobile Equipment**

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** resulting from the **insured's aviation operations** during the policy period arising out of ownership, maintenance or use of **mobile equipment**.

The insurance provided by Coverage 14 is **excess insurance.**

Coverage 15 - Liability for the Operation of an **Auto** while on Airport **Premises**

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** resulting from the **insured's aviation operations** during the policy period arising out of ownership, lease, rental, arrangement or use of **autos** while on airport **premises** exclusive of any public roadways and parking areas.

The insurance provided by Coverage 15 is **excess insurance.**

Coverage 16 - Liability for the Sale of **Aircraft** and Aircraft Products and Services

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** resulting from the **insured's aviation operations** during the policy period arising out of the:

    A.  sale or relinquishment from exclusive written lease, by the **named insured**, of a **scheduled aircraft** or any aircraft sold or relinquished prior to the policy period;

    B.  furnishing to others, by the **insured**, any materials, parts, equipment, fuel, maintenance, aircraft services, used for or in connection with aircraft, **premises** or **mobile equipment**;

    C.  furnishing to others, by the **insured**, of food or beverages in connection with the operation of **aircraft** or **premises**.

The insurance provided by Coverage 16 is **excess insurance** and will only apply if the **bodily injury** or **property damage** occurs away from the **insured's premises**, after physical possession of the aircraft, materials, parts, equipment, fuel, food or beverages have been relinquished to others and any services have been completed.

## Coverage 17 - Liability for Hangarkeeper Operations

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of "loss" to **aircraft** (subject to the deductible shown in the Declarations if applicable unless such "loss" results from fire or explosion or while the **aircraft** is dismantled and being transported) occurring while such **aircraft** is in the care, custody or control of the **insured** for safekeeping, storage, service or repair. However:

A. The amount the Company will pay for damages is limited as described under Declarations, "Item 5. Limits of the Company's Liability", Coverage 17;

B. If repairs are made by the **insured**, the Company will not pay more than:

1. the **insured**'s actual net cost for necessary material and parts of like kind and quality; and

2. the **insured**'s actual wages for labor at current straight time rates with no premium for overtime, plus 150% of such wages as an allowance for overhead and supervision. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section Two - Defense, Settlement and Supplementary Payments of Liability Claims.

C. Coverage 17 applies to damages because of "loss" to **aircraft** only if the "loss" occurs during the policy period.

D. The insurance provided by Coverage 17 shall not apply to:

1. the **insured**'s liability under any agreement to be responsible for "loss";

2. "loss" to robes, wearing apparel, personal effects or merchandise;

3. to "loss" or damage to **aircraft** or parts of any **aircraft**:

   a. owned by, leased to, rented to or loaned to the **insured** or partner(s) of the **insured**;

   b. owned by, leased to, rented to or loaned to an officer or employee of the **insured** unless the property is an **aircraft** in the **insured**'s custody under an agreement for which a charge has been made;

4. "loss" due to theft or conversion caused in any way by the **insured**'s employees, partners or shareholders;

5. "loss" to **insured**'s work, arising out of it or any part of it;

6. "loss" to **aircraft** while **in-flight**; or

7. liability for **property damage** to **non-owned aircraft** and **temporary substitute aircraft** under Coverage 3.

Definition applicable to Coverage 17:

"Loss" means direct and accidental loss of or damage to tangible property.

Coverage 18 – Liability for Garagekeeper Operations

The Company will promptly pay on behalf of the **insured** all sums which the **insured** becomes legally obligated to pay as damages because of **property damage** to an **auto** occurring while such **auto** is in the care, custody or control of the **insured** for valet parking, towing, safekeeping, storage or while on airport **premises** for any other incidental use by the **insured**.

The insurance provided by Coverage 18 shall not apply to:

    A.   the **insured**'s liability under any agreement to be responsible for "loss";

    B.   "loss" to robes, wearing apparel, personal effects or merchandise;

    C.   "loss" or damage to an **auto** or parts of any **auto**:

        1.   owned by, leased to, rented to or loaned to the **insured** or partner(s) of the **insured**;

        2.   owned by, leased to, rented to or loaned to an officer or employee of the **insured** unless the **auto** is in the **insured**'s custody due to towing, or for valet parking for which a charge has been made.

    D.   "loss" due to theft or conversion caused in any way by the **insured**, its employees, its partners or shareholders.

Definition applicable to Coverage 18:

"Loss" means direct and accidental loss of or damage to tangible property.


## Section Two - Defense, Settlement and Supplementary Payments

    A.   The Company has the right and duty to defend any suit against the **insured** seeking damages because of **bodily injury, personal injury, advertising injury**, or **property damage** covered by the Policy, even if any of the allegations of the suit are groundless, false or fraudulent. The Company may make any investigation and settlement of any claim or suit as it deems expedient. The Company will not be obligated to pay any expense, claim or judgment or to defend any suit after the applicable limit of liability has been exhausted by the payment of judgment(s) or settlement(s).

    B.   The Company will promptly pay in addition to the applicable limit of liability:

        1.   all the Company's expenses and all costs taxed against the **insured** in any suit the Company is required to defend including:

            a.   any pre-judgment interest awarded against the **insured** on that part of the judgment the Company is required to pay under the terms of the Policy;

            b.   all interest on the amount of any judgment that the Company is required to pay under the terms of the Policy which accrues after the entry of the judgment and before the Company has paid, tendered or deposited in to court that portion of the judgement owed by the Company; and

            c.   any costs for arbitration alleging damages covered by the Policy which the **insured** must or may submit to;

2.  premium on appeal bonds required or, premiums on bonds to release attachments in any suit defended by the Company for any amount not exceeding the applicable limit of liability;

3.  the cost of bail bonds, up to $10,000 for each incident, required of the **insured** because of an **occurrence** or violation of law or a regulation for civil aviation arising out of the **insured's aviation operations** and involves the use of **aircraft** or **premises**. However, the Company has no obligation to furnish or apply for any bail bonds;

4.  all reasonable expenses incurred by the **insured** for first aid, medical and surgical relief that is imperative at the time of an accident because of **bodily injury** covered by the Policy;

5.  all reasonable expenses incurred by the **insured** at the Company's request; however, the Company will not pay more than $500.00 per day for each of the **insured**'s employees for the loss of earnings, wages or salaries; and

6.  all expenses incurred by the **insured** that have been approved in advance by the Company or the **Aviation Managers**.

## Section Three - **Physical Damage** Coverages

### Coverage 19 - **Physical Damage** Coverage for **Scheduled Aircraft** (including **Ingestion** and Emergency Landing)

The Company will promptly pay for any **physical damage** to a **scheduled aircraft** that occurs during the policy period including its disappearance or theft, less any applicable deductible. A **scheduled aircraft** shall be considered missing under disappearance or stolen under theft if such **aircraft** is unable to be located for fifteen (15) days after reported missing or stolen. In addition, if an unexpected event causes a **scheduled aircraft** to make a landing in a location where it cannot safely depart and there is no **physical damage**, the Company will pay the reasonable costs of transporting the **scheduled aircraft** to the nearest suitable airport.

### Coverage 20 - **Physical Damage** Coverage for **Spare Engines** and **Spare Parts** Including Transit

The Company will promptly pay for **physical damage** to or theft of **spare engines** and **spare parts** that are owned by the **Named Insured** or for which the **Named Insured** is legally responsible.

The insurance provided by Coverage 20 is **excess insurance**.

Coverage 21 - Automatic Insurance for Increased Value of **Scheduled Aircraft** or **Spare Engines** and **Spare Parts**

If the value of a **scheduled aircraft** is increased during the policy period because of modifications or the addition of equipment or, the **named insured** modifies or acquires additional **spare engines** or **spare parts**, the applicable insurance provided by the Policy under Section Three - **Physical Damage** Coverage will apply to the increased value. The amount of insurance in the Declarations will automatically increase by the actual cost to the **named insured** of the modifications, equipment or additional **spare engines** or **spare parts** as evidenced by the **named insured**'s records provided:

    A.   the **named insured** reports to the **Aviation Managers** any increase in value as soon as possible after completion of modifications or additions;

    B.   that unless the **Aviation Managers** has agreed in advance, the maximum automatic increase of value will not exceed:

        1.   the Maximum Automatic limit for **Physical Damage** to a **scheduled aircraft** shown in the Declarations, "Item 5. Limits of the Company's Liability" as shown under Coverage 21 in the Declarations; or

        2.   the Maximum Automatic Limit for **spare engines** and **spare parts** shown in the Declarations, "Item 5. Limits of the Company's Liability", as shown under Coverage 21 in the Declarations; and

    C.   any additional premiums for the increased limits are paid by the **named insured.**

Coverage 22 - **Physical Damage** Coverage for Mechanics Tools

This insurance is extended to cover tools of the **insured**'s employee mechanics against direct and accidental physical loss or damage from external causes while such tools are in the care, custody and control of the **named insured** or such employee while acting within the scope of employment. The Company's liability shall not exceed the limits stated in the Declarations under Coverage 22.

The insurance provided by Coverage 22 shall not apply to claims caused by or arising from:

    A.   wear, tear, deterioration, rust, or inherent vice;

    B.   delay, depreciation, or loss of use;

    C.   mechanical, electrical, hydraulic, pneumatic or structural breakdown or failure;

    D.   artificial electric current;

    E.   extremes of temperature and humidity;

    F.   mysterious disappearance, loss or shortage disclosed upon taking inventory;

    G.   infidelity, dishonesty of the **insured** or anyone in the service of the **insured**;

    H.   wrongful taking or secretion by any person or organization in lawful possession thereof; or

    I.   failure to save and protect such property from further loss or harm after an **occurrence** to which this endorsement applies.

## Section Four - Additional Coverages

### Coverage 23 - Temporary Replacement Parts Rental Expense

If a **scheduled aircraft** suffers a **physical damage** loss covered by the Policy, the Company will promptly pay the **named insured's** additional expenses of renting or leasing, for the period of repair, temporary replacement component part(s), to replace the part(s) damaged in the loss. This includes the **named insured's** cost of installation, removal and transportation. Coverage 23 will not apply unless the actual time required for the repair exceeds the minimum required repair period shown for Coverage 23 in the Declarations. Coverage 23 shall not apply to rental expense incurred after the maximum coverage period has expired. The maximum coverage period begins immediately following the minimum required repair period.

### Coverage 24 - Replacement **Aircraft** Rental Expense

If a **scheduled aircraft** suffers a **physical damage** loss covered under the Policy, the Company will promptly pay the **named insured's** **extra expense** of leasing or renting a **temporary substitute aircraft** while the **scheduled aircraft** is being repaired.

The insurance provided by Coverage 24 shall not apply to **extra expense** incurred:

A.  unless the actual time required to repair the damaged **aircraft** exceeds the minimum required repair period shown under this coverage in the Declarations;

B.  if another **aircraft** is available at no extra charge for its use;

C.  if the **named insured** acquires through ownership, lease, lease-purchase option, or otherwise, a permanent replacement for the damaged **aircraft**;

D.  if the **scheduled aircraft** is a **total loss** and the Company has offered the **named insured** a proof of loss;

E.  beyond the maximum coverage period shown under Coverage 24 as shown in the Declarations. The maximum coverage period begins immediately following the minimum required repair period and is to run consecutively without interruption;

F.  unless such **extra expense** is actually incurred by the **named insured**; or

G.  for replacement of any commercial revenue generating charter or Title 14 CFR Part 135 operation, unless such flight is solely for the **aircraft** owner's personal use.

### Coverage 25 - Search and Rescue Expense

The Company will promptly reimburse the **insured** for its actual incurred expenses for search and rescue operations performed by or at the request of the **named insured**.

The insurance provided by Coverage 25 shall not apply to any claim, cost or expense:

A.  for any governmental or military search and rescue operations;

B.  arising out of any loss or damage to any equipment used in connection with the search and rescue operations;

C.  arising out of the injury or death of any persons involved in the search and rescue operations;

D.  incurred after it is reasonably assumed that there are no survivors; or

E.  associated with salvaging the **aircraft** or any other property.

Coverage 26 – Runway Foaming and Crash Control Expense

The Company will promptly reimburse the **insured** for their actual incurred cost of runway or **aircraft** foaming and, fire, crash control, or rescue expenses, for the purpose of minimizing a **physical damage** or **bodily injury** loss covered by the Policy.

Coverage 27 – Trip Interruption Expense

The Company will promptly reimburse the **insured** for their reasonable expenses of food, travel by commercial carrier and lodging of **passengers**, incurred from the place where an **aircraft** suffers a covered **physical damage** loss to the intended final destination of the damaged **aircraft**, or back to the place they originally boarded the **aircraft** if the trip is discontinued.

The insurance provided by Coverage 27 shall not apply to any cost or expense for replacement **aircraft** rental for which payment is expected or made under Coverage 24.

Coverage 28 – Automatic Insurance for Newly Acquired Aircraft

If, during the policy period, the **named insured** becomes the owner or exclusive lessee of an additional **aircraft** and is required to provide **aircraft** liability and/or **aircraft physical damage** insurance and, as soon as possible, reports the acquisition to the **Aviation Managers**, the insurance afforded by the Policy will apply to the additional **aircraft** incepting at the time of acquisition. Unless the **named insured** and the **Aviation Managers** agree otherwise, the coverage and limits of liability pertaining to the additional **aircraft** will be the same as is provided for other **scheduled aircraft**. If more than one **aircraft** is scheduled in Coverage 1 and more than one liability limit is scheduled, the lowest liability limit in the schedule will apply to the newly acquired **aircraft**. The insured value of the additional **aircraft** will be the actual cost of the **aircraft** to the **named insured** but not exceeding the Maximum **Physical Damage** Limit shown under Coverage 28 in the Declarations. The **named insured** agrees to pay any additional premium required because of the addition of the newly acquired **aircraft**.

Coverage 29 – Lay-Up Credit For **Scheduled Aircraft**

If a **scheduled aircraft** is not used **in-flight** for more than the minimum lay-up period shown in the Declarations the **named insured** agrees to notify the **Aviation Managers** as soon as practicable. At the end of the policy period, the Company will return a pro-rata percentage credit of the applicable premium for the entire period of the lay-up as shown under Coverage 29 in the Declarations.

The insurance provided by Coverage 29 shall not apply to any **scheduled aircraft** laid up because of any loss or damage covered by the Policy.

Coverage 30 – Personal Effects and Baggage Expense

The Company will promptly pay on behalf of or reimburse the **named insured** for all sums which the **named insured** is liable for or pays to others for the loss of or **physical damage** to the personal effects and baggage of a **passenger**. Coverage 30 will only apply if the loss or damage occurred during the policy period and while the personal effects and baggage were in the care, custody or control of an **insured**.

## Section Five - **Medical Expense**

### Coverage 31 - Medical Payments for **Scheduled Aircraft** and **Non-Owned Aircraft**

Regardless of liability, the Company will promptly pay all the reasonable **medical expenses** incurred within one year from the date of injury for each covered **passenger** who sustains **bodily injury** caused by an **occurrence** during the policy period.

The insurance provided by Coverage 31 shall not apply for the benefit of a **crew member** on **non-owned aircraft** unless the Declarations shows a specific limit for **crew member** under the **non-owned aircraft** section of Coverage 31 and:

A.   the **crew member** is an officer, director, stockholder, employee, partner, or agent of the **named insured** while acting in the scope of employment, or

B.   the person is a **crew member** who would normally be operating a **scheduled aircraft** but is operating a **non-owned aircraft** on behalf of the **named insured**.

### Coverage 32 - **Premises** Medical Payments

The Company will promptly pay all reasonable **medical expenses** incurred within one year from the date of injury for each person who sustains **bodily injury** caused by an **occurrence** during the policy period arising out of the **insured**'s **aviation operations** and ownership, maintenance or use of **premises**.

The following provisions apply to Coverage 31 and 32:

A.   medical payments will not be made to anyone until all medical benefits available under a workers compensation or similar law have been exhausted;

B.   as soon as possible, the injured person or someone on their behalf will give the Company written proof of claim, under oath if required, and will, if requested by the Company, authorize the Company to obtain medical reports and copies of records. The injured person will submit to examination by physicians selected by the Company if and when the Company may reasonably require;

C.   the Company may pay the injured person or any person or organization rendering the services. Any payments made under these sections do not constitute an admission of liability of any **insured**, person, organization, or of the Company; and

D.   the total liability of the Company for all **medical expenses** incurred by or on behalf of each covered **passenger** or person who sustains **bodily injury** will not exceed the applicable Limit of Liability as stated in the Declarations under Coverage 32 for that **passenger** or person.

## Section Six - Policy Definitions

When appearing in bold print in the Policy the following definitions apply:

"**Advertisement**" means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.

**Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

"**Advertising injury**" means injury, other than **bodily injury**, **property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of the **insured**'s **advertisement** of goods, products or services, that are:

A. copyrighted **advertisement**; or

B. registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

"**Aircraft**" means any **scheduled aircraft** and any other **aircraft** for which insurance is provided under the Policy. The definition includes the **aircraft**'s propulsion system, and parts and equipment installed in or on the **aircraft**. Parts that are temporarily removed are also included in the definition even if replaced by similar parts. Tools and repair equipment standard for the **aircraft** and normally carried on the **aircraft** are also included within the definition.

"**Auto**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

"**Aviation Managers**" means Starr Aviation Agency, Inc., Starr Adjustment Services, Inc. and Starr Underwriting Agents Limited, or any of them.

"**Aviation operations**" means all operations arising from the ownership, maintenance or use of locations or **aircraft** for aviation activities including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities.

"**Bodily injury**" means physical injury sustained by any person, caused by an **occurrence** during the policy period, including sickness, disease, mental anguish and death at any time resulting therefrom.

"**Crew member**" means any **passenger** such as the **pilot-in-command**, co-pilot, flight engineer or flight attendant, who is required for or assisting in **aircraft** operations.

"**Extra expense**" means that portion of the actual incurred cost of leasing or renting a replacement **aircraft** which exceeds the cost of operating **aircraft** the **named insured** would have incurred if the **scheduled aircraft** had not been damaged.

"**Excess insurance**" means insurance that only applies when all other valid and collectible insurance, including any formal self-insurance program or self-insured retention plan, available to the **named insured/insured** has been exhausted (other than insurance specifically purchased by the **named insured** to apply as excess over this Policy). If no such insurance or self-insurance exists, excess insurance coverage provided by this policy shall act as primary. If the other insurance is written through the **Aviation Managers** as primary insurance, the total limit of the Company's or Companies' liability will not exceed the greatest or greater limit on any one Policy.

"**In-flight**" means, with respect to fixed-wing **aircraft**, the time commencing from the start of the take-off run of the **aircraft** and continuing until it has completed its landing roll. With respect to an **aircraft** that is a rotorcraft, it is any time the rotors are moving under power for lift-off or flight, until the rotors cease revolving after landing. With respect to any other **aircraft**, it is any time the **aircraft** is off a supporting surface as a result of propulsion, buoyancy or aerodynamic reaction.

"**In-motion**" means anytime the **aircraft** is moving under its own power or the momentum generated therefrom or, while it is **in-flight**. With respect to an **aircraft** that is a rotorcraft, it is anytime the rotors are moving under power or the momentum generated therefrom.

"**Ingestion**" means **physical damage** to a turbine engine or turbine auxiliary power unit, if they are included within the definition of **aircraft**, caused by objects or substances that are not or were not part of the engine or its accessories, which is the result of a single incident of sufficient severity to require, or would require if its severity were known at the time, immediate repair before further use.

"**Insured**" means:

    A.  for all coverage:

        1.  the **named insured**;

        2.  any director, officer, partner, employee, agent or stockholder of the **Named Insured** while that person is acting within their official capacity as such;

    B.  for all Section One - Liability Coverages except Coverage 2, 3 and 5 (**Non-owned aircraft** Liability Coverage and Products Liability Coverages) means:

        1.  any person or organization while riding in, using or legally responsible for a **scheduled aircraft** or **temporary substitute aircraft** provided that the use is within the scope of the permission of the **named insured**; and

        2.  any other person or organization but, only for their legal liability covered by the Policy which arises solely out of the acts or omissions of a person or organization in A. above.

    C.  other than any persons or organizations described in paragraph A. above, none of the following is considered an **insured** regardless of subparagraph B. 1. above:

        1.  any person or organization or their agents or employees engaged in the design, manufacture, maintenance, repair, or sale of **aircraft**, **aircraft** engines, components or accessories, or engaged in the operation of any **aircraft**, airport, hangar, flight school, flight service, or piloting service, with respect to any **occurrence** arising out of such activity, and

        2.  the owner, lessor or their agents or employees, of any **non-owned aircraft** covered by the Policy.

"**Intellectual property law or right**" means any:

    A.  certification mark, copyright, patent or trademark (including collective or service marks);

    B.  right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

    C.  other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or,

    D.  other judicial or statutory law concerning piracy, unfair competition or other similar practices.

"**Medical expense**" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and/or funeral services.

"**Mobile equipment**" means a land vehicle (including any machinery or apparatus attached), whether or not self-propelled, used in connection with the maintenance or operation of **aircraft** or **premises** that is:

    A.  not subject to motor vehicle registration;

    B.  used exclusively on **premises** owned by or rented to the **named insured** including the roadways or property immediately adjoining; or

    C.  designed for use principally off public roads.

"**Named Insured**" means the person(s) or organization(s) shown in Item 1. of the Declarations.

"**Non-owned aircraft**" means any **aircraft** except:

    A.  an **aircraft** owned in whole or in part by or registered to the **named insured;**

    B.  a **scheduled aircraft**; or

    C.  an **aircraft** having a seating configuration exceeding the maximum number of seats shown in the Declarations for Coverage 2 (regardless of the actual number of **passengers** on the **aircraft**).

"**Occurrence**" means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended by the **insured**. However, the definition includes **bodily injury** or **property damage** resulting from the efforts to prevent dangerous interference with any **aviation operations**.

"**Partial loss**" means any **physical damage** loss which is not a **total loss**.

"**Passenger**" means any person in, on or boarding the **aircraft** for the purpose of riding, flying in or exiting from it after a ride, flight or attempted flight.

"**Personal injury**" means means injury, other than **bodily injury**, **property damage** or **advertising injury**, caused by an offense of:

    A.  false arrest, false detention or other false imprisonment;

    B.  malicious prosecution;

    C.  wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of dwelling, **premises** or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner; or

    D.  electronic, oral, written or other publication of material that:

        1.  libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

        2.  violates a person's right of privacy.

"**Physical damage**" means accidental, direct physical loss of or damage to **scheduled aircraft**, **spare engines** or **spare parts** during the policy period including **ingestion**, but it does not include the loss of use or any residual depreciation in value either before or after any repairs have been made.

"**Pilot-in-command**" means the pilot aboard the **aircraft** who is responsible for its **in-flight** operation.

"**Premises**" means the portions of airports, buildings or areas used by the **Named Insured** directly in connection with the ownership, operation, maintenance or use of any **aircraft** and the **Named Insured**'s **aviation operations**.

"**Property damage**" means accidental damage to or destruction of the tangible property of others caused by an **occurrence** during the policy period and the resultant loss of use of the property. **Property damage** also includes the loss of use of the tangible property of others that is not physically damaged but that is caused by an **occurrence** during the policy period.

"**Salvage value**" means the value of the damaged property prior to any repairs.

"**Scheduled aircraft**" means any **aircraft** listed under Coverage 1 - Liability for **Scheduled Aircraft** and Coverage 19 - **Physical Damage** Coverage for **Scheduled Aircraft** in the Declarations or any **aircraft** covered under Coverage 28 - Automatic Insurance for Newly Acquired **Aircraft.**

"**Spare engines**" means propulsion engines and auxiliary power units which have been or which are intended to be installed in or on a **scheduled aircraft** or **temporary substitute aircraft** and which are not included within the policy definition of an **aircraft**.

"**Spare parts**" means parts or accessories, except **spare engines**, specifically designed for installation in or on **aircraft** or **mobile equipment** which are not included within the policy definition of an **aircraft** or **mobile equipment**.

"**Temporary substitute aircraft**" means any **non-owned aircraft** used in place of a **scheduled aircraft** that is temporarily withdrawn from use because of its damage, breakdown, repair, modification, inspection, servicing, loss or destruction.

"**Total loss**" means any **physical damage** loss for which the cost to repair when added to the **salvage value** equals or exceeds:

    A.   the insured value of a **scheduled aircraft**, or

    B.   the actual cash value of any other insured property.

Theft or disappearance of the entire **aircraft** is considered a **total loss.**

## Section Seven - Exclusions

The insurance provided by the Policy shall not apply:

    A.   to liability assumed by the **insured** in any type of agreement except as provided by Coverage 9 - Liability for Contractual Agreements;

    B.   to any obligation which the **insured** or its insurance carrier may be held liable under any workers' compensation, unemployment compensation, disability benefits law or under any similar law;

    C.   to **bodily injury** or **personal injury** to any employee of the **insured** arising out of and in the course of their employment by the **insured**, or to any claims for **bodily injury** as a consequence thereof. This exclusion shall not apply to liability assumed by the **insured** in any agreement required by a military or governmental authority as a prerequisite for using an airport or an airport facility, nor will this exclusion apply to Coverage 5 - **Passenger** Voluntary Settlements;

    D.   to illegal, criminal or dishonest acts or activities, alleged or otherwise, committed by or at the direction of or with the knowledge and consent of directors or officers of the **insured** and with the knowledge at the time that such act was illegal or criminal, but with respect to the **named insured** this exclusion shall apply only if such activities or acts are with the knowledge and consent of an officer or director of the **named insured**;

    E.   to any claim, loss or expense arising out of any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

F.   to any **insured** while the **aircraft** is in-flight if piloted by other than the pilot or pilots designated under Item 4 of the Declarations;

G.   under all Section One – Liability Coverage and Section Two - Defense, Settlement and Supplementary Payments of Liability Claims, for **property damage** to property owned, occupied, used, rented, transported by or in the care, custody, or control of an **insured** except as provided under Coverage 2, 3, 6, 7, 8, 17 and 18;

H.   under Section One - Liability Coverage and Section Two - Defense, Settlement and Supplementary Payments of Liability Claims or Section Five - **Medical Expenses**, to any **insured** who is also **insured** under any contract of nuclear energy liability insurance, in effect at the time of the **occurrence**, issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters that covers the claim, loss, damage or expense or would cover the claim, loss, damage or expense if such policy's limits of liability were not exhausted;

I.   under all Section Three - **Physical Damage** Coverage, to any loss, damage, claim or expense:

which is due and confined to wear and tear, deterioration, mechanical or electrical breakdown of the insured property, its equipment, components or accessories, or to tires, unless the damage is caused by fire, malicious mischief, vandalism or theft or unless the loss or damage is the direct result of other **physical damage**, including **ingestion**, covered by the Policy. Damage resulting from the breakdown, failure or malfunction of an engine component, accessory or part is considered mechanical breakdown of the entire engine;

J.   claims or damage resulting from:

1.   war, whether declared or undeclared, invasion, acts of foreign enemies, hostilities, civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

2.   confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title, used by or under the order of any government, public or local authority, whether civil, military or *de facto*;

3.   claims arising while the insured property is outside the control of the **insured** because of any of the above perils;

K.   to an **aircraft**'s turbine engine (including a turbine powered auxiliary power unit) caused by heat resulting from starting, attempted starting, operation or shutdown thereof;

L.   caused by any type of radioactive contamination;

M.   caused by the embezzlement, secretion or conversion of the insured property; or

N.   due to depreciation in the value of, or arising from the loss of use of the insured property.

## Section Eight - Limit of the Company's Liability

A. Other Insurance

Except with respect to coverage provided by the Policy as **excess insurance**, if there is other insurance including any formal self-insurance program or self-insured retention plan, in the **insured**'s name or otherwise, against any loss, liability, or expense covered by the Policy, the Company will not be liable under the Policy for a greater proportion of such loss, liability or expense than the applicable limit of the Company's liability under the Policy bears to the total applicable limits of all other valid and collectible insurance.

B. Total Liability for Section One - Liability Coverage

The limits apply separately to each insured **aircraft** and each **insured** but, regardless of the number of **insureds** under the Policy, persons or organizations who sustain **bodily injury**, **personal injury** or **property damage**, claims made, or suits brought because of **bodily injury**, **personal injury** or **property damage**, the Company's total liability for all damages, including damages for care and loss of services, as the result of any one **occurrence** will not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**", and in the annual aggregate if specified. For the purpose of determining the limit of the Company's total liability, all **bodily injury**, **personal injury** and **property damage** arising out of continuous or repeated exposure to the same general conditions will be considered arising out of one **occurrence**.

C. Total Liability for Section Three - **Physical Damage** Coverage

1. In the event of a **total loss**, the Company will promptly pay the **named insured**:

   a. the Insured Value of the **scheduled aircraft** as shown under Coverage 19 of the Declarations;

   b. the **named insured**'s financial interest in any **spare engine** or **spare part** (less any applicable deductible) but, not exceeding its actual cash value or the limits for the applicable coverage in the Declarations, whichever is less. In addition, the Company will promptly refund the pro-rated unearned premium for any **scheduled aircraft** that is a **total loss**. At the time of payment of a **total loss** by the Company, the Company's exposure, under Coverage 19, ceases.

2. In the event of a **partial loss**, the Company's Liability shall not exceed:

   a. the total of the following items, less any applicable deductible, if the repairs are made by an **insured**:

      i.   the **insured**'s net costs for necessary material and parts of like kind and quality;

      ii.  "Transportation Costs" (as defined below);

      iii. the reasonable costs of food, lodging, and transportation of the **insured**'s employees required for the actual period of repair if the loss occurs away from the **insured**'s base of operations and

      iv.  actual wages paid for labor at the current straight time rates at the place of repair plus the reasonable cost of required supervision and overhead;

b.  the total of the following items, less any applicable deductible, if the repairs are made by other than the **insured**:

  i.  the net cost to the **insured**, to make repairs with material and parts of like kind and quality;

  ii.  the reasonable transportation, food and lodging expenses for a necessary representative(s) of the **insured** to inspect or authorize repairs and/or test fly the **aircraft** but not exceeding 5% of the repair cost estimate or $5,000., whichever is less. This paragraph will not apply unless the **aircraft** is being repaired away from its primary base of operations;

  iii.  any additional "Transportation Costs" incurred.

"Transportation Costs" means the cost of transportation, by the least expensive reasonable means of:

  A.  damaged parts from the site of the loss to and from the most practicable place for repair;

  B.  replacement parts from the nearest available source to the site of the loss; or

  C.  the damaged property to the most practicable place for repair and, then, to the site of the loss or to the **insured**'s home airport, whichever is closer.

3.  In no event will the Company's liability for a **partial loss** exceed the insured value of the **scheduled aircraft**; or with respect to Coverage 20, the **named insured**'s financial interest in any **spare engine** or **spare part**, its actual cash value, or the applicable limit of liability shown under Coverage 20 in the Declarations, whichever is less.

4.  In the event of a **partial loss**, whether or not such loss is covered by the Policy, the Insured Value of the **scheduled aircraft** will automatically be reduced at the time of the loss by the amount of the loss. When repairs begin, the insured value will automatically increase by the value of the completed repairs until the insured value of the **scheduled aircraft** is fully restored.

5.  If the Company pays a claim, whether for a **partial loss** or a **total loss**, the Company is entitled to all salvage. There will, however, be no abandonment of the salvage to the Company without its prior consent.

6.  The Company has the right to return stolen property any time before the loss is paid with payment for any resultant **physical damage**.

7.  The amount specified as a deductible (if any) for **scheduled aircraft** does not apply to a **total loss**, constructive **total loss** or any loss caused by fire, lightning, explosion, transportation of parts, theft, robbery or pilferage. However, any **partial loss** caused by fire or explosion, resulting directly or indirectly from the collision or crash of an **aircraft** while **in-motion**, will be subject to the **in-motion** deductible, if any. **Scheduled aircraft** deductibles will not apply in the event of a collision with any other **aircraft** insured through the **Aviation Managers** under another policy.

D. Total Liability for Section Four - Additional Coverage

The total liability of the Company for all costs or expenses incurred by or on behalf of the **named insured** will not exceed the Limit of Liability stated in the Declarations that applies to each applicable coverage part.

E. Severability of Interests

The limits and coverage apply separately to each **insured**, but the inclusion within the Policy of more than one **insured** will not increase the applicable limits of the Company's total liability.

F. Two or More **Aircraft** Insured by the Policy

In the event that two or more **aircraft** are insured by the Policy, the applicable limits of liability and deductibles (if any) will apply separately to each.

## Section Nine - Notice of Claims and Other Duties of an **Insured**

In the event of any accident, **occurrence**, claim, suit or loss, the **insured**(s) and/or the **insured**'s legal representative(s) agree to:

A. not assume any obligation or liability, nor offer to pay any reward except at the **insured**'s expense, nor incur any expense other than those items listed in Section Two - Defense, Settlement and Supplementary Payments of the Policy;

B. promptly contact the Company and follow up with prompt written notice including (if known) the:

1. time, place and description of events;

2. names and locations of **passengers**, witnesses, injured or deceased persons, and

3. location and description of any damaged property and/or **aircraft**;

C. immediately forward to the Company every demand, notice, summons, legal paper, or any other process they receive;

D. cooperate and assist the Company in all matters of any claim or suit;

E. do nothing after the accident or loss to harm the Company's right of recovery against any person or organization who may be liable to the **insured**;

F. authorize the Company to obtain any records relating to a loss;

G. not abandon the **aircraft** or any other salvage without the Company's prior consent;

H. take all reasonable precautions to protect the **aircraft** or other insured property after any accident or loss. Reasonable expenses incurred in providing such protection will be reimbursed by the Company. Any further loss or damage due to the **insured**'s failure to reasonably protect the insured property will not be covered by the Policy;

I.   promptly report any suspected theft or vandalism to the local police;

J.   allow the Company the option to inspect any **aircraft** or insured property before any repairs begin or its disposal;

K.   file with the Company within ninety (90) days after the loss a sworn proof of loss including the information and in the form the Company reasonably requires and, upon the Company's request, submit to examination under oath;

L.   exhibit the damaged property and produce for the Company's examination all pertinent records and invoices, permitting copies to be made, at reasonable times and places as the Company designates;

M.   if requested, provide clear title to the Company for any salvaged property at the time **total loss** payment is made by the Company;

N.   allow the Company to inspect **aircraft** records, repair and service invoices, sales receipts, and log books as may be required in the settlement of any claim.

## Section Ten - Other Conditions of Insurance

A.   Appraisal of Loss

If the **named insured** and the Company fail to agree on the amount of a loss, either may, within sixty (60) days after a proof of loss is filed, demand an appraisal of the loss. The **named insured** and the Company will each select a competent aircraft appraiser and the appraisers will select a competent and disinterested umpire. The appraisers will judge the amount of the loss. If they do not agree, they will submit their difference to the umpire. Agreement in writing of any two of the three will determine the amount of the loss. The **named insured** and the Company will each pay their chosen appraiser and will bear equally the expenses of the appraisal and the umpire. The Company will not be held to have waived any of its rights by any act relating to appraisal.

B.   Action Against the Company

No action will be taken against the Company unless, prior to such action, the **insured** has fully complied with all of the terms and conditions of the Policy and the amount of loss has been determined as set forth below:

1.   Liability Coverages - With respect to Section One - Liability Coverage, no action will lie against the Company until the amount of the **insured**'s obligation to pay has been finally determined either by judgment against the **insured** after actual trial or, by written agreement of the **insured**, the claimant and the Company. Any person, organization or their legal representative who has secured such judgment or written agreement will be entitled to recover under the Policy to the extent of the coverage provided by the Policy. No person or organization shall have any right under the Policy to join the Company as a party to any action against the **insured** to determine the **insured**'s liability, nor will the Company be impleaded by the **insured** or its legal representative. Bankruptcy or insolvency of the **insured** or of the **insured**'s estate will not relieve the Company of any of its obligations under the Policy.

2.  **Physical Damage** Coverages - With respect to Section Three – **Physical Damage** Coverage, no action will lie against the Company, nor will payment for loss be required, until thirty (30) days after the required proof of loss is filed with the Company and the amount of loss is determined as described in Section Three - **Physical Damage** Coverage of the Policy. Any action against the Company must be taken within one year after the date of the loss.

3.  Additional Coverages - With respect to Section Four - Additional Coverages, no action will lie against the Company, nor will payment for loss be required, until thirty (30) days after any required proofs of claims have been filed with the Company. Any action against the Company must be taken within one year after the date of the loss.

C.  Cancellation and Non-Renewal of the Policy

1.  Cancellation : The Policy may be cancelled by the **named insured** by mailing prior written notice to the Company stating when the cancellation will be effective. The Policy may be cancelled by the Company by mailing to the first **named insured** at the first address shown under Item 2. of the Declarations stating when, not less than ninety (90) days thereafter, the cancellation will be effective. However, only ten (10) days prior written notice will be provided if the cancellation is for non-payment of any premium due. The effective date and hour of cancellation stated in the notice will become the end of the policy period.

    If the **named insured** cancels the Policy, earned premium will be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium will be computed on a pro-rata basis. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium by the Company is not a condition required for the cancellation to be effective.

2.  Non-Renewal - The Company will mail written notice to the first **named insured** at least sixty (60) days prior to the expiration date of the Policy in the event either decides not to renew the Policy.

    The proof of mailing or delivering notice of non-renewal or cancellation to the first **named insured** by the Company will be sufficient proof of notice to all **insureds**.

D.  Certificates of Insurance

    A Certificate of Insurance issued by the Company for or on behalf of the **named insured**, including any certificates required by military or governmental authorities, automatically provides the insurance as is evidenced in that certificate.

E.  Changing the Policy

    Nothing in the Policy can be changed or waived except by the Company's written endorsement, approved and signed by the **Aviation Managers**.

F.  Company's Rights of Recovery

    In the event of any payment made under the Policy, the Company will assume all of the **insured**'s rights of recovery against any person or organization. The **insured** will execute and deliver instruments and papers and do whatever else is necessary to enforce those rights.

G.  Cross Liability

The Policy will cover claims by one **insured** against another **insured**. However, in no event will this provision increase or change the limits of the Company's liability nor will it change any of the Declarations, Insuring Agreements, Exclusions, Conditions, Limits of Liability or other terms of the Policy.

H.  Financial Responsibility Laws

(applicable to Section One - Liability Coverages)

When the Policy is certified as proof of financial responsibility under the provisions of any **aircraft** financial responsibility law, the insurance afforded by the Policy for **bodily injury** or **property damage** will comply as necessary with the provisions of the law but, in no event in excess of the limits of liability stated in the Declarations of the Policy. The **named insured** agrees to reimburse the Company for any payment made which the Company would not have been obligated to make under the terms of the Policy except for the agreement in this paragraph.

I.  Inspection

The Company, or their authorized representative, shall be permitted to inspect the insured property and any of its records during the policy period and for one year afterward.

J.  Mexican Operations Warning

Although the Policy provides coverage in Mexico, the Mexican Government requires proof of **aircraft** liability written through a Mexican insurance company. If the **insured** does not have proof of Mexican liability insurance, the **aircraft** can be confiscated by the Mexican authorities and any **passengers** jailed or detained.

It is a good practice to contact the **insured**'s agent or broker to arrange coverage if any flights are planned into or near Mexican Airspace. Mexican liability coverage is available through the **Aviation Managers** if needed.

K.  Policy Compliance with State Law

If the terms of the Policy conflict with the **named insured**'s state or province law, the Policy terms are deemed amended as necessary to comply with that law.

L.  Policy Territory

The insurance provided by the policy shall be effective worldwide.

Payment of loss under the policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

M.  Transfer of the Policy to Others

Interest in the Policy may not be transferred without prior written agreement from the Company. If the **named insured** dies or is judged legally bankrupt or insolvent and the **named insured** or their legal representative notifies the Company within sixty (60) days of the judgment or death, effective the date of the judgment or death, the **named insured** will become:

1.  any person or organization having custody of the **scheduled aircraft** until a legal agent is appointed; or,

2.  the **named insured's** legal representative.

N.  Acceptance of Policy

By acceptance of the Policy, the **named insured** agrees that the statements in the Declarations are its representations, that the Policy is issued in reliance upon the truth of the representations and that the Policy embodies all agreements by and between the **named insured** and the Company or any of its agents.

In Witness Whereof, the company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the company.

Charles Dangelo - President                    Nehemiah E. Ginsburg - General Counsel

**STARR INDEMNITY & LIABILITY COMPANY**

*** Additional Insured Policy Endorsements Omitted

## PHYSICAL DAMAGE COVERAGE ENDORSEMENT

The **physical damage** coverage for **scheduled aircraft** set forth on the Declarations Page, is     AMENDED     to read as follows:

| FAA Cert. Number | Make & Model | Insured Value | Deductible Not In Motion | In Motion/ Ingestion |
|---|---|---|---|---|
| N384JW | BOMBARDIER LEARJET 60 | $ 2,000,000. | $ NIL | $ NIL |
| N95VM | CESSNA CITATION CJ3+ | $ 7,500,000. | $ NIL | $ NIL |
| N325ND | CESSNA CITATION EXCEL | $ 3,800,000. | $ NIL | $ NIL |
| N680KJ | CESSNA CITATION SOVEREIGN+ | $ 12,000,000. | $ NIL | $ NIL |
| N576SA | CESSNA CITATION XLS+ | $ 5,900,000. | $ NIL | $ NIL |
| N86MN | BEECHCRAFT HAWKER 800XP | $ 2,000,000. | $ NIL | $ NIL |
| N804PF | CESSNA CITATION EXCEL | $ 3,250,000. | $ NIL | $ NIL |
| N1788R | CESSNA CITATION EXCEL | $ 2,500,000. | $ NIL | $ NIL |
| N758CX | CESSNA CITATION X 750 | $ 3,400,000. | $ NIL | $ NIL |
| N248SF | CESSNA CITATION EXCEL | $ 3,300,000. | $ NIL | $ NIL |
| N226WC | BEECHCRAFT HAWKER 400XT | $ 5,200,000. | $ NIL | $ NIL |
| N655MM | CESSNA CITATION SOVEREIGN 680 | $ 5,700,000. | $ NIL | $ NIL |
| N94JJ | CESSNA CITATION EXCEL | $ 2,900,000. | $ NIL | $ NIL |
| N2AZ | CESSNA CITATION X 750 | $ 7,000,000. | $ NIL | $ NIL |
| N474PC | CESSNA CITATION CJ2 | $ 2,500,000. | $ NIL | $ NIL |
| N621CS | CESSNA CITATION SOVEREIGN 680 | $ 6,700,000. | $ NIL | $ NIL |
| N900TV | CESSNA CITATION 560-XL | $ 3,500,000. | $ NIL | $ NIL |
| N125TH | CESSNA CITATION X 750 | $ 5,000,000. | $ NIL | $ NIL |
| N127SJ | BEECHCRAFT 400A | $ 1,200,000. | $ NIL | $ NIL |
| N226MY | BOMBARDIER CHALLENGER 604 | $ 5,900,000. | $ NIL | $ NIL |
| N233XL | CESSNA CITATION EXCEL | $ 4,100,000. | $ NIL | $ NIL |
| N263TA | CESSNA CITATION SOVEREIGN 680 | $ 8,500,000. | $ NIL | $ NIL |
| N324WK | GULFSTREAM G-200 | $ 4,200,000. | $ NIL | $ NIL |
| N339RA | BEECHCRAFT HAWKER 4000 | $ 5,000,000. | $ NIL | $ NIL |
| N39RN | BOMBARDIER CHALLENGER 604 | $ 5,500,000. | $ NIL | $ NIL |
| N883TW | BOMBARDIER CHALLENGER 350 | $ 25,000,000. | $ NIL | $ NIL |
| N515CP | CESSNA CITATION 560-XL | $ 5,500,000. | $ NIL | $ NIL |
| N516GH | GULFSTREAM G-V | $ 10,000,000. | $ NIL | $ NIL |

All other provisions of this policy remain the same.

This endorsement becomes effective _____ JULY 15, 2017 _____ to be attached to and hereby made a part of:
Policy No. ___ 1000223023-02 ___
Issued to  DELTA PRIVATE JETS, INC.

By  STARR INDEMNITY & LIABILITY COMPANY

Endorsement No. ___ 157. ___

Date of Issue ___ JULY 28, 2017  (WH) ___        By _____
                                                              (Authorized Representative)

Starr 10328 (5/06)

# PHYSICAL DAMAGE COVERAGE ENDORSEMENT

The **physical damage** coverage for **scheduled aircraft** set forth on the Declarations Page, is    AMENDED    to read as follows:

| FAA Cert. Number | Make & Model | Insured Value | Deductible Not In Motion | Deductible In Motion/ Ingestion |
|---|---|---|---|---|
| N8000U | CESSNA CITATION XLS | $ 7,000,000. | $ NIL | $ NIL |
| N604PS | BOMBARDIER CHALLENGER 604 | $ 8,000,000. | $ NIL | $ NIL |
| N7707X | DASSAULT FALCON 7X | $ 22,000,000. | $ NIL | $ NIL |
| N47HF | CESSNA CITATION EXCEL | $ 2,600,000. | $ NIL | $ NIL |
| N613LB | CESSNA CITATION CJ2 | $ 2,600,000. | $ NIL | $ NIL |
| N157PB | BOMBARDIER LEARJET 45 | $ 2,000,000. | $ NIL | $ NIL |
| N325PT | BOMBARDIER LEARJET 45XR | $ 5,000,000. | $ NIL | $ NIL |
| N495DD | BOMBARDIER CHALLENGER 604 | $ 7,000,000. | $ NIL | $ NIL |
| N772EC | BOMBARDIER LEARJET 60 | $ 1,550,000. | $ NIL | $ NIL |
| N555BK | CESSNA CITATION BRAVO | $ 1,500,000. | $ NIL | $ NIL |
| N313JL | BOMBARDIER CHALLENGER 300 | $ 14,000,000. | $ NIL | $ NIL |
| N998CX | CESSNA CITATION X 750 | $ 3,600,000. | $ NIL | $ NIL |
| N877FL | BEECHCRAFT 400A | $ 1,200,000. | $ NIL | $ NIL |
| N926HL | CESSNA CITATION EXCEL | $ 3,200,000. | $ NIL | $ NIL |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |

All other provisions of this policy remain the same.

This endorsement becomes effective _____ JULY 15, 2017 _____ to be attached to and hereby made a part of: Policy No. ___ 1000223023-02 ___
Issued to  DELTA PRIVATE JETS, INC. _____

By  STARR INDEMNITY & LIABILITY COMPANY _____

Endorsement No. ___ 158. _____

Date of Issue ___ JULY 28, 2017  (WH) ___          By _____
                                                              (Authorized Representative)

Starr 10328 (5/06)

## PILOT WARRANTY ENDORSEMENT

This policy is COMPLETED    as follows with respect to Item 4. Pilots as set forth on the Declarations Page:

WITH RESPECT TO THE FOLLOWING: ALL AIRCRAFT COVERED UNDER THIS POLICY

PILOTS AS APPROVED BY THE NAMED INSURED OR THEIR DESIGNEE.

The pilot warranty set forth above shall not apply to Liability Coverage for **Non-Owned Aircraft, Temporary Substitute Aircraft** and Charter Referral. Additionally, the pilot warranty in set forth above shall not apply while the insured **aircraft** is under the care, custody or control of a repair station for the purpose of maintenance, repair or test flights.

All other provisions of this policy remain the same.

This endorsement becomes effective_____JULY 15, 2017_____to be attached to and hereby made a part of:
Policy No. ___1000223023-02
Issued to   DELTA PRIVATE JETS, INC.

By STARR INDEMNITY & LIABILITY COMPANY

Endorsement No.     159

Date of Issue      JULY 28, 2017   (WH)              By _____
                                                          (Authorized Representative)

Starr 10317 (6/06)

## PRIMARY AND NON-CONTRIBUTORY ENDORSEMENT

This policy is amended as follows:

.With the respect to the following scheduled persons or organizations, all coverages shall be primary and non-contributory with respect to any other insurance policies held by the following scheduled persons or organizations.

Schedule:

TOM BAENZIGER, AS TRUSTEE OF THE WILLIAM V. CAMPBELL TRUST UNDER AGREEMENT
DATED MARCH 11, 2009, EILEEN BOCCI CAMPBELL, JAMES CAMPBELL, MARGARET
CAMPBELL
C/O THE DOLLAR COMPANY, 305 2ND STREET, SUITE 7, LOS ALTOS, CA 94022

SHELTAIR JACKSONVILLE INTERNATIONAL, LLC.
4860 NE 12TH AVENUE
JACKSONVILLE, FL 33334

All other provisions of this policy remain the same.

This endorsement becomes effective_____JULY 15, 2017_____to be attached to and hereby made a part of:
Policy No.____1000223023-02____
Issued to   DELTA PRIVATE JETS, INC.

By STARR INDEMNITY & LIABILITY COMPANY

Endorsement No. ____160.____

Date of Issue ____JULY 28, 2017  (WH)____          By _____
                                                                      (Authorized Representative)

Starr 10466 (6/07)

## PREMIUM AMENDMENT ENDORSEMENT

This policy is amended as follows:

It is agreed that AS RESPECTS SECTION 4 CONTRACTS OF THE FINANCE LEASE ENDORSEMENT FOR N71BD, THE CONTRACTS ARE AS FOLLOWS: 1. THE SECURED CREDIT AGREEMENT DATED AS OF DECEMBER 2, 2015 AMONG, INTER ALIOS, GLOBAL JET CAPITAL LLC, GLOBAL JET CAPITAL CANADA ULC, GLOBAL JET CAPITAL LUXCO ONE S.A R.L., THE LENDERS PARTY THERETO, BANK OF UTAH, AS SECURITY TRUSTEE, AND DEUTSCHE BANK AG, NEW YORK BRANCH, AS THE ADMINISTRATIVE AGENT AS THE SAME MAY BE AMENDED OR SUPPLEMENTED FROM TIME TO TIME. 2. THE SECURITY AGREEMENT DATED AS OF DECEMBER 2, 2015 AMONG GLOBAL JET CAPITAL LLC, GLOBAL JET CAPITAL CANADA ULC, GLOBAL JET CAPITAL LUXCO ONE S.A R.L., THE GRANTORS PARTY THERETO, AND BANK OF UTAH AS SECURITY TRUSTEE AS THE SAME MAY BE AMENDED OR SUPPLEMENTED FROM TIME TO TIME. 3. SERVICING AGREEMENT DATED DECEMBER 2, 2015 AMONG, INTER ALIOS, GLOBAL JET CAPITAL, INC., AS SERVICER, GLOBAL JET CAPITAL LLC, GLOBAL JET CAPITAL CANADA ULC, AND GLOBAL JET CAPITAL LUXCO ONE S.A R.L. 4. AIRCRAFT LEASE AGREEMENT DATED AS OF DECEMBER 21, 2012 BETWEEN GENERAL ELECTRIC CREDIT CORPORATION OF TENNESSEE AS LESSOR AND JJSA AVIATION, LLC, AS LESSEE AS THE SAME MAY BE AMENDED OR SUPPLEMENTED FROM TIME TO TIME. 5. ASSIGNMENT AND ASSUMPTION AGREEMENT (N71BD) DATED AS OF SEPTEMBER 30, 2015 BETWEEN GENERAL ELECTRIC CREDIT CORPORATION OF TENNESSEE AS ASSIGNOR AND HIGH LINE AIR, LLC AS ASSIGNEE AS THE SAME MAY BE AMENDED OR SUPPLEMENTED FROM TIME TO TIME. 6. NOTICE OF SECURITY ASSIGNMENT FROM HIGH LINE AIR, LLC AND BANK OF UTAH, AS SECURITY TRUSTEE TO JJSA AVIATION, LLC DATED AS OF DECEMBER 9, 2015 AS THE SAME MAY BE AMENDED OR SUPPLEMENTED FROM TIME TO TIME. 7. SALE AND PURCHASE AGREEMENT DATED AS OF OCTOBER 2, 2015 BETWEEN GENERAL ELECTRIC CAPITAL CORPORATION, AS SELLER AND GLOBAL JET CAPITAL, INC. AS BUYER AS THE SAME MAY BE AMENDED OR SUPPLEMENTED FROM TIME TO TIME.

All other provisions of this policy remain the same.

This endorsement becomes effective_____JULY 15, 2017_____to be attached to and hereby made a part of:
Policy No. ____1000223023-02____
Issued to ____DELTA PRIVATE JETS, INC.____

By STARR INDEMNITY & LIABILITY COMPANY

Endorsement No. ____161.____

Date of Issue ____JULY 28, 2017 (WH)____        By _____
                                                        (Authorized Representative)

Starr 10189 (7/06)

## PROFIT COMMISSION CLAUSE

This policy is amended as follows:

The Company shall return to the **Named Insured** upon expiration of this policy by the **Named Insured** for a twelve (12) month period an amount equal to _____15%_____ of the following:

70%_____ of the earned premium less paid claims, reserves, and claims expenses. Such return premium shall be provisional only and shall be subject to further adjustment when the reserves and expenses have been finalized.

THIS PROFIT COMMISSION SHALL BE CALCULATED ON AN AIRCRAFT BY AIRCRAFT BASIS PROVIDED A 50% LOSS RATIO OR LESS ON OVERALL OPERATION.

All other provisions of this policy remain the same.

This endorsement becomes effective_____JULY 15, 2017_____to be attached to and hereby made a part of:
Policy No. ___1000223023-02_____
Issued to  DELTA PRIVATE JETS, INC.

By STARR INDEMNITY & LIABILITY COMPANY

Endorsement No. ____182._____

Date of Issue _____JULY 28, 2017  (WH)_____       By _____
                                                           (Authorized Representative)

Starr 10457 (4/07)

## LIABILITY COVERAGE ENDORSEMENT

The liability coverage for **scheduled aircraft** set forth on the Declarations Page, is    AMENDED    to read as follows:

| FAA Cert. Number | Make & Model | Year Built | Seats Crew / Pass | | Aircraft Liability Limit |
|---|---|---|---|---|---|
| N384JW | BOMBARDIER LEARJET 60 | 1998 | 2 | 8 | $ 150,000,000. |
| N828DR | CESSNA CITATION XLS | 2008 | 2 | 9 | $ 150,000,000. |
| N95VM | CESSNA CITATION CJ3 + | 2016 | 2 | 8 | $ 150,000,000. |
| N325ND | CESSNA CITATION EXCEL | 2002 | 2 | 8 | $ 150,000,000. |
| N680KJ | CESSNA CITATION SOVEREIGN + | 2014 | 2 | 8 | $ 300,000,000. |
| N86MN | BEECHCRAFT HAWKER 800 XP | 1997 | 2 | 9 | $ 150,000,000. |
| N576SA | CESSNA CITATION XLS + | 2009 | 2 | 8 | $ 150,000,000. |
| N178BR | CESSNA CITATION EXCEL | 2003 | 2 | 8 | $ 150,000,000. |
| N758CX | CESSNA CITATION X 750 | 1998 | 2 | 8 | $ 150,000,000. |
| N248SF | CESSNA CITATION EXCEL | 2002 | 2 | 9 | $ 150,000,000. |
| N226WC | BEECHCRAFT HAWKER 400XT | 1999 | 2 | 8 | $ 300,000,000. |
| N655MM | CESSNA CITATION SOVEREIGN 680 | 2006 | 2 | 9 | $ 150,000,000. |
| N94JJ | CESSNA CITATION EXCEL | 2001 | 2 | 8 | $ 150,000,000. |
| N2AZ | CESSNA CITATION X 750 | 2001 | 2 | 8 | $ 300,000,000. |
| N474PC | CESSNA CITATION CJ2 | 2002 | 2 | 6 | $ 150,000,000. |
| N621CS | CESSNA CITATION SOVEREIGN 680 | 2007 | 2 | 9 | $ 150,000,000. |
| N900TV | CESSNA CITATION 560-XL | 2000 | 2 | 8 | $ 150,000,000. |
| N125TH | CESSNA CITATION X 750 | 2002 | 2 | 8 | $ 150,000,000. |
| N127SJ | BEECHCRAFT 400A | 1998 | 2 | 8 | $ 150,000,000. |
| N226MY | BOMBARDIER CHALLENGER 604 | 2001 | 3 | 9 | $ 200,000,000. |
| N233XL | CESSNA CITATION EXCEL | 2002 | 2 | 9 | $ 150,000,000. |
| N263TA | CESSNA CITATION SOVEREIGN 680 | 2009 | 2 | 9 | $ 150,000,000. |
| N324WK | GULFSTREAM G-200 | 2005 | 3 | 9 | $ 150,000,000. |
| N339RA | BEECHCRAFT HAWKER 4000 | 2010 | 2 | 10 | $ 150,000,000. |
| N39RN | BOMBARDIER CHALLENGER 604 | 1999 | 3 | 10 | $ 200,000,000. |
| N804PF | CESSNA CITATION EXCEL | 2002 | 2 | 9 | $ 150,000,000. |
| N515CP | CESSNA CITATION 560-XL | 2006 | 2 | 9 | $ 150,000,000. |
| N516GH | GULFSTREAM G-V | 1998 | 3 | 14 | $ 300,000,000. |
| N883TW | BOMBARDIER CHALLENGER 350 | 2017 | 2 | 10 | $ 300,000,000. |

All other provisions of this policy remain the same.

This endorsement becomes effective _____ JULY 15, 2017 _____ to be attached to and hereby made a part of:
Policy No. ___ 1000223023-02 ___
Issued to  DELTA PRIVATE JETS, INC. 

By _ STARR INDEMNITY & LIABILITY COMPANY 

Endorsement No. _____ 79 _____

Date of Issue _____ JULY 28, 2017 (WH) _____    By _____

(Authorized Representative)

Starr 10376 (9/08)

# LIABILITY COVERAGE ENDORSEMENT

The liability coverage for **scheduled aircraft** set forth on the Declarations Page, is   AMENDED    to read as follows:

| FAA Cert. Number | Make & Model | Year Built | Seats Crew / Pass | Aircraft Liability Limit |
|---|---|---|---|---|
| N8000U | CESSNA CITATION XLS | 2007 | 2  9 | $  200,000,000. |
| N604PS | BOMBARDIER CHALLENGER 604 | 2000 | 3  10 | $  200,000,000. |
| N7707X | DASSAULT FALCON 7X | 2008 | 4  11 | $  300,000,000. |
| N613LB | CESSNA CITATION CJ2 | 2003 | 2  7 | $  150,000,000. |
| N495DD | BOMBARDIER CHALLENGER 604 | 2001 | 3  10 | $  200,000,000. |
| N555BK | CESSNA CITATION BRAVO | 2000 | 2  9 | $  150,000,000. |
| N877FL | BEECHCRAFT 400A | 1999 | 2  8 | $  150,000,000. |
| N926HL | CESSNA CITATION EXCEL | 2001 | 2  7 | $  150,000,000. |
| N998CX | CESSNA CITATION X 750 | 1999 | 2  8 | $  150,000,000. |
| N47HF | CESSNA CITATION EXCEL | 2003 | 2  7 | $  150,000,000. |
| N157PB | BOMBARDIER LEARJET 45 | 1998 | 2  8 | $  200,000,000. |
| N325PT | BOMBARDIER LEARJET 45XR | 2009 | 2  9 | $  200,000,000. |

All other provisions of this policy remain the same.

This endorsement becomes effective _____JULY 15, 2017_____ to be attached to and hereby made a part of: Policy No. ____1000223023-02____
Issued to  DELTA PRIVATE JETS, INC.

By  STARR INDEMNITY & LIABILITY COMPANY

Endorsement No. ____80____

Date of Issue ____JULY 28, 2017  (WH)____          By _____
                                                        (Authorized Representative)

Starr 10376 (9/06)

## LOSS PAYEE ENDORSEMENT

In consideration of additional premium of $ _____ INCLUDED _____ , this policy is amended as follows:

Any loss under **physical damage** coverage is payable as interest may appear to the **named insured** and the following Loss Payee:

As respects  N710R 2008 LEARJET 45 _____

BANK OF UTAH, AS SECURITY TRUSTEE AND ITS SUCCESSORS AND ASSIGNS

All other provisions of this policy remain the same.

This endorsement becomes effective_____ JULY 15, 2017 _____to be attached to and hereby made a part of:
Policy No. ____ 1000223023-02 ____
Issued to   DELTA PRIVATE JETS, INC. _____

By STARR INDEMNITY & LIABILITY COMPANY _____

Endorsement No. _____ 81 _____

Date of Issue _____ JULY 28, 2017  (WH) _____          By _____
                                                                          (Authorized Representative)

Starr 10234 (3/06)

## LOSS PAYEE ENDORSEMENT

In consideration of additional premium of $ _____ INCLUDED _____ , this policy is amended as follows:

Any loss under **physical damage** coverage is payable as interest may appear to the **named insured** and the following Loss Payee:

As respects   N71BD 2000 GULFSTREAM G-IV _____

BANK OF UTAH, AS SECURITY TRUSTEE AND ITS SUCCESSORS AND ASSIGNS

All other provisions of this policy remain the same.

This endorsement becomes effective_____ JULY 15, 2017 _____to be attached to and hereby made a part of:
Policy No.  ___ 1000223023-02 ___
Issued to  DELTA PRIVATE JETS, INC. _____

By STARR INDEMNITY & LIABILITY COMPANY _____

Endorsement No.  ___ 82 _____

Date of Issue  ___ JULY 28, 2017  (WH) ___          By _____
                                                              (Authorized Representative)

Starr 10234 (3/06)

## LOSS PAYEE ENDORSEMENT

In consideration of additional premium of $ _____INCLUDED_____ , this policy is amended as follows:

Any loss under **physical damage** coverage is payable as interest may appear to the **named insured** and the following Loss Payee:

As respects  ALL SCHEDULED AIRCRAFT _____

ANY INSURED OWNER OF APPLICABLE AIRCRAFT AS ENDORSED ON THE POLICY

All other provisions of this policy remain the same..

This endorsement becomes effective_____ JULY 15, 2017 _____to be attached to and hereby made a part of:
Policy No. ___1000223023-02___
Issued to   DELTA PRIVATE JETS, INC. _____

By STARR INDEMNITY & LIABILITY COMPANY _____

Endorsement No. _____83_____

Date of Issue _____JULY 28, 2017  (WH)_____          By _____
                                                               (Authorized Representative)

Starr 10234 (3/06)

## MANAGED AIRCRAFT ENDORSEMENT

This policy is amended as follows:

1)  The "Management Company" scheduled in Item 1. has entered into an Aircraft Management Agreement with the person(s) or organization(s) described below and referred to an "Insured Owner":

"Management Company"  DELTA PRIVATE JETS, INC.
82 COMAIR BOULEVARD
ERLANGER, KY 41018


"Insured Owner"  UYTSAIFLY 800XP, LLC
10910 S 69TH EAST AVENUE
TULSA, OK 74133


2)  The "Insured Owner" (referred to as you and your below) is included as an **Insured** for all coverage and if designated in Item 1 as:

a.  An individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an **Insured**.  Your members, your partners, and their spouses are also **Insureds**, but only with respect to the conduct of your business.

c.  A limited liability company, you are an **Insured**.  Your members are also **Insureds**, but only with respect to the conduct of your business.  Your managers are **Insureds**, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture, or limited liability company, you are an **Insured**. Your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors.  Your stockholders are also **Insureds**, but only with respect to their liability as stockholders.

e.  A trust, you are an **Insured**.  Your trustees are also **Insureds**, but only with respect to their duties as trustees.

The **Insured** status granted to the "Insured Owner" shall be further qualified to apply solely as respects to the Coverage and Limits as described in this endorsement and:

a.  With respect to any **Non-Owned Aircraft** shall be an **Insured** only if:

1.  The **aircraft** is being operated by the "Management Company" on behalf of the "Insured Owner" or the flight is arranged by the "Management Company" on behalf of the "Insured Owner", and

2.  The **aircraft** being operated on behalf of the "Insured Owner" is not owned in whole or in part by or registered to the "Insured Owner", and

3.  The seating capacity of the **aircraft** does not exceed the "maximum number of seats shown in the Declarations" for Coverage 2 (regardless of the number of **passengers** on board the **aircraft**).

Starr 10356 (6/06)    Page 1 of Endorsement No. 136.

    b.  With respect to Coverage 16 shall be an **Insured** only for:

        1.  The sale or relinquishment for an exclusive written lease of a **Scheduled Aircraft** described in this endorsement, or;

        2.  The furnishing to others by the "Insured Owner" food or beverage in connection with the operation of an **aircraft** scheduled in this endorsement or another **aircraft** insured by this policy but only while operated or arranged by the "Management Company" on behalf of the "Insured Owner".

3)  The insurance afforded by this policy for the interest of the "Insured Owner" described in Item 1. of this endorsement shall not be invalidated by any act or neglect of the "Management Company" listed in Item 1. of this endorsement provided that the "Insured Owner" described in Item 1. of this endorsement did not consent to such act or neglect which would otherwise invalidate the insurance provided by this policy or that the "Insured Owner" described in Item 1. of this endorsement had no knowledge that such act or neglect to which they consented would invalidate the insurance provided by this policy.

The insurance afforded by this policy for the interest of the "Management Company" listed in Item 1. of this endorsement shall not be invalidated by any act or neglect of the "Insured Owner" described in Item 1. of this endorsement provided that the "Management Company" listed in Item 1. of the policy Declarations did not consent to such act or neglect which would otherwise invalidate the insurance provided by this policy.

4)  The Limits of Insurance as scheduled in this endorsement shall apply:

    a.  For the interest of the "Insured Owner" at all times;

    b.  For the interest of the "Management Company" but only while operating a **Scheduled Aircraft**, **Non-Owned Aircraft** or **Temporary Substitute Aircraft** on behalf of the "Insured Owner".

Such limits as scheduled in this endorsement are part of and not in addition to the limits described elsewhere in the policy for the same coverage. The total limit of the Company's liability shall not exceed the greater of the limits scheduled in this endorsement or the limits described elsewhere in the policy for the same coverage.

5)  Schedule of Limits and Coverage:

Section One - Liability Coverages

Coverage 1 - Liability for **Scheduled Aircraft**

| FAA Cert. Number | Make & Model | Year Built | Seats Crew / Pass | | Aircraft Liability Limit |
|---|---|---|---|---|---|
| N86MN | BEECHCRAFT HAWKER 800XP | 1997 | 2 | 9 | $ 150,000,000. |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |

Coverage 2 - Liability for the Use of **Non-Owned Aircraft**

$ _____ 150,000,000. Each **Occurrence**

Maximum Number of Seats: __60__

Reporting Grace Period: __30__ consecutive days

This limit is part of, and not in addition to, the limit provided for Coverage 1.

Coverage 3 - Liability for **Property Damage** to **Non-Owned Aircraft** and **Temporary Substitute Aircraft**

$ _____ 150,000,000. Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 2.

Coverage 4 - Liability for Charter Referral

$ _____ 150,000,000. Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1.

Coverage 5 - **Passenger** Voluntary Settlements for **Scheduled Aircraft** and **Non-Owned Aircraft**

A. Settlement Limits:

    1. With respect to any **Scheduled Aircraft** or **Temporary Substitute Aircraft**:

        Each Non-**Crew Member Passenger**: $ _____ 1,000,000. Each **Occurrence**

        Each **Crew Member**: $ _____ 1,000,000. Each **Occurrence**

    2. With respect to any **Non-Owned Aircraft** except a **Temporary Substitute Aircraft**:

        Each Non-**Crew Member Passenger**; $ _____ 1,000,000. Each **Occurrence**

        Each **Crew Member**: $ _____ 1,000,000. Each **Occurrence**

        Total All **Non-Owned Aircraft Crew Members** and Non-**Crew Member Passengers** Combined: $ _____ 20,000,000. Each **Occurrence**

B. Maximum Weekly Indemnity Limit: $ _____ 5,000. Each **Passenger**

C. Maximum Indemnity Period: __52__ consecutive weeks

These limits are part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Starr 10356 (6/06)    Page 3 of Endorsement No. __136.____

Coverage 6 - Liability for **Property Damage** to Hangars and Their Contents

$_____100,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 7 - Liability for Fire Damage to Real Property

$_____5,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 8 - Liability for Cargo

$_____5,000,000.  Each **Occurrence**

Deductible:  $_____NIL  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 9 - Liability Under Contractual Agreements

$_____150,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 10 - Liability for **Personal Injury** and __IN__ cluding **Advertising Injury**

$_____25,000,000.  Each Offense and in the Annual Aggregate

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 11 - Liability For Alcohol Beverage Service

$_____150,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 12 - Liability for Incidental Medical Malpractice

$_____150,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 13 - Liability for the Use of **Premises**

$_____150,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 1 or 2, whichever applies to the loss.

Coverage 14 - Liability for the Operation of **Mobile Equipment**

$_____150,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Coverage 15 - Liability for the Operation of an **Auto** while on Airport **Premises**

$_____150,000,000.  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Coverage 16 - Liability for the Sale of **Aircraft** and Aircraft Products and Services

$_____150,000,000.  Each **Occurrence** and in the Annual Aggregate

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Coverage 17 - Liability for Hangarkeeper Operations

$_____150,000,000.  Each **Aircraft**         $_____150,000,000.  Each **Occurrence**

Deductible:  $_____NIL  Each **Aircraft**         $_____NIL  Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Coverage 18 - Liability for Garagekeepers

$_____500,000.  Any One **Auto**         $_____1,500,000.  Any One Loss

Deductible:  $_____NIL  Each **Auto**

This limit is part of, and not in addition to, the limit provided for Coverage 13.

Section Two - Defense, Settlement and Supplementary Payments

Section Three - **Physical Damage** Coverages

Coverage 19 - **Physical Damage** Coverage for **Scheduled Aircraft** (including **Ingestion** and Emergency Landing)

| FAA Cert. Number | Make & Model | Insured Value | Deductible Not **In Motion** | Deductible **In Motion/ Ingestion** |
|---|---|---|---|---|
| N86MN | BEECHCRAFT HAWKER 800XP | $ 2,000,000. | $ NIL | $ NIL |
|  |  | $ | $ | $ |
|  |  | $ | $ | $ |
|  |  | $ | $ | $ |
|  |  | $ | $ | $ |
|  |  | $ | $ | $ |
|  |  | $ | $ | $ |
|  |  | $ | $ | $ |

Coverage 20 - **Physical Damage** Coverage for **Spare Engines** and **Spare Parts** Including Transit

$ _____15,000,000._ Each **Occurrence**

Deductible:

Not **In Motion** $ _____NIL_ Each **Occurrence**

**In Motion** $ _____NIL_ Each **Occurrence**

Coverage 21 - Automatic Insurance for Increased Value of **Scheduled Aircraft** or **Spare Engines** and **Spare Parts**

Maximum Automatic **Physical Damage** Limit for **Scheduled Aircraft**:

$ _____65,000,000._ any one **aircraft** without prior approval

Maximum Automatic **Physical Damage** Limit for **Spare Engines** and **Spare Parts**:

$ _____15,000,000._ without prior approval of the **Aviation Managers**

Coverage 22 - **Physical Damage** Coverage for Mechanics Tools

$ _____250,000._ Each Employee    $ _____N/A. Each **Occurrence**

Deductible: $ _____NIL_ Each Employee/Each **Occurrence**

This limit is part of, and not in addition to, the limit provided for Coverage **13**.

Section Four - Additional Coverages

Coverage 23 - Temporary Replacement Parts Rental Expense

$ _____ 5,000,000. Each Loss

Minimum Repair Period:          __NIL__  days

Maximum coverage period:        __180__  consecutive days

Coverage 24 - Replacement **Aircraft** Rental Expense

$ _____ 5,000,000. Each Loss

Minimum Repair Period:          __NIL__  days

Maximum coverage period:        __180.__  consecutive days

Coverage 25 – Search and Rescue Expenses

$ _____ 5,000,000. Each Loss

Coverage 26 - Runway Foaming and Crash Control Expenses

$ _____ 5,000,000. Each Loss

Coverage 27 – Trip Interruption Expense Coverage

$ _____ 150,000. Each **Passenger**/Each Loss

Coverage 28 – Automatic Insurance for Newly Acquired **Aircraft**

Maximum **Physical Damage** Limit $ _____ 65,000,000. any one **aircraft** without prior approval of the **Aviation Managers.**

Coverage 29 - Lay-Up Credit for **Scheduled Aircraft**

A pro-rated return of _75_ % of the applicable premium at policy expiration if the **scheduled aircraft** is laid up for _30_ or more consecutive days.

Coverage 30 – Personal Effects and Baggage Expense

$ _____ 500,000. Each **Passenger**

Section Five - **Medical Expenses**

Coverage 31 - Medical Payments for **Scheduled Aircraft** and **Non-Owned Aircraft**.

    A.  With respect to any **Scheduled Aircraft** or **Temporary Substitute Aircraft**:

        Each Non-**Crew Member Passenger**:  $_____ 250,000.  Each **Occurrence**

        Each **Crew Member**:  $_____ 250,000.  Each **Occurrence**

    B.  With respect to any **Non-Owned Aircraft** except a **Temporary Substitute Aircraft**:

        Each Non-**Crew Member Passenger**:  $_____ 250,000.  Each **Occurrence**

        Each **Crew Member**:  $_____ 250,000.  Each **Occurrence**

Coverage 32 - **Premises** Medical Payments

  $_____ 250,000.  Each Person      $_____ N/A  Each **Occurrence**

All other provisions of this policy remain the same.

This endorsement becomes effective_____ JULY 15, 2017 _____to be attached to and hereby made a part of:
Policy No. ___ 1000223023-02 ___
Issued to ___ DELTA PRIVATE JETS, INC. ___

By STARR INDEMNITY & LIABILITY COMPANY

Endorsement No. ___ 136. ___

Date of Issue ___ JULY 28, 2017  (WH) ___    By _____
                                   (Authorized Representative)

Starr 10356 (6/06)     Page 8

## SWORN STATEMENT IN PROOF OF TOTAL LOSS

Insured Value
$1,600,000

Policy/Certificate Number
1000223023-04

Issued
7/15/2019

Expires
7/15/2020

Claim Number
AVSIL0490311

TO:  **STARR INDEMNITY & LIABILITY COMPANY**

By the above-indicated policy of insurance, STARR INDEMNTY & LIABILITY COMPANY insured

DELTA PRIVATE JETS, INC.

against loss from the perils specified therein to the following described aircraft:

Make and Model:  1997 Hawker 800XP          Registration: N86MN

(1)  DATE OF LOSS: A loss occurred on           October 7, 2019

The cause and origin of the said loss or damage was:
Due to aircraft suffering damage from nose gear collapse during landing.

At the time of the loss or damage the aircraft was operated solely by    William Gilstrap & Jeard Ballew         who then had pilot's certificate numbers   FAA on file          , which authorized them to operate the aforementioned aircraft and the above listed pilots were approved under the Policy and operating the aircraft for a purpose permitted by the policy.

(2)  TITLE AND INTEREST: When this policy was acquired, during the currency thereof and at the time of the loss, the interest of the insured in the aircraft was sole and unconditional ownership, and no other person, firm or corporation had any interest, mortgage or otherwise, therein. (State exceptions below, if any, and amounts paid/owed, if any)  If additional space is needed, please attach a separate sheet.
UYTSAIFLY 800XP, LLC.  – registered owner

(3)  TOTAL INSURANCE: The undersigned hereby asserts there was no other insurance (whether or not valid and/or collectible) on the above-described aircraft and/or equipment. (State exceptions, if any)
N/A

(4)  USE OF AIRCRAFT: The undersigned hereby asserts that at the time of loss the involved aircraft was being used consistent with the use of the aircraft as approved and agreed to by the Aviation Managers and as listed in the policy provisions. (state exceptions, if any)           As Endorsed

(5)  THE INSURED VALUE of said aircraft at the time of the loss was:          $    1,600,000.00

(6)   STATEMENT OF TOTAL LOSS:          $    1,600,000.00

(7)  DEDUCTIBLE:          $    NIL

(8)  THE AMOUNT CLAIMED under the above-numbered policy is:          $    1,600,000.00

*T p S*
(initial)

Exhibit B

(9)  SUBROGATION: To the extent of the amount paid under the Policy, the undersigned hereby assigns to the Company any and all claims and causes of action the undersigned may have against any third party arising out of the loss for which this Proof of Loss is submitted.  The Company is hereby subrogated to such claims and causes of action and is empowered to sue, compromise or settle in the name of the undersigned, and the undersigned hereby pledges cooperation in any such action.

*TDS*
(initial)

(10)  AUTHORITY TO PAY: I hereby direct payment of claim be made as follows:

_____UYTSAIFLY 800XP, LLC._____    the sum of $___1,600,000.00____

*TDS*
(initial)

The said loss or damage did not originate by any act, design, or procurement on the part of the insured; nothing has been done by or with the privity or consent of the insured to violate the conditions of the policy, or to render it void; no articles are mentioned herein but such as were lost or damaged at time of loss and belonging to insured at time of loss; no property saved has in any manner been concealed, and no attempt to deceive the Company as to extent of this loss has in any manner been made.  Any other information which may be required, will be furnished upon request.  All information provided on this form is true and correct to the best of my knowledge.

It is expressly understood and agreed that the furnishing of this form to the insured or aid in the preparing of this form by an adjuster or any agent of the above Company is not a waiver of any rights of said company.

State of  _Kentucky_                                    _____ (Insured)
                                                        Delta Private Jets, Inc.
County of  _Kenton_                                     Per _____ *CFO* ___ (Title)

Subscribed and sworn to before me this  _11_ day of _November_, 20 _19_

                                         _Haley Upshaw_ Notary Public

_Oklahoma_                                              _____ (Insured)
                                                        Managing Member for UYTSAIFLY 800XP LLC.
County of  _Tulsa_                                      Per _Manager_ _____ (Title)

Subscribed and sworn to before me this  _9th_ day of _November_, 20 _19_

                                         _Trudy Edwards_ Notary Public

State of  _____                              _____ (Insured)

County of  _____                             Per _____ (Title)

Subscribed and sworn to before me this  _____ day of _____, 20_____

                                         _____ Notary Public

*TDS*
(initial)

Page 2 of 4

**FRAUD WARNINGS**

**NOTICE TO APPLICANTS**:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO ARKANSAS AND NEW MEXICO APPLICANTS**:  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO COLORADO APPLICANTS**:  IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.  PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES.  ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AUTHORITIES.

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS**:  WARNING:  IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES.  IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

**NOTICE TO FLORIDA APPLICANTS**:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY IN THE THIRD DEGREE.

**NOTICE TO KENTUCKY APPLICANTS**:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

**NOTICE TO LOUISIANA APPLICANTS**:  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MAINE APPLICANTS**:  IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY.  PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

**NOTICE TO NEW JERSEY APPLICANTS**:  ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO NEW YORK APPLICANTS**:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

*P D S*
(initial)

**NOTICE TO OHIO APPLICANTS:** ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

**NOTICE TO OKLAHOMA APPLICANTS: WARNING:** ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY (365:15-1-10, 36§3613.1).

**NOTICE TO PENNSYLVANIA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO TENNESSEE AND VIRGINIA APPLICANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

*TDS*
(initial)